ALICE FOGLE et al. v. JENNIE PINDELL et al., Appellants.

Division One, February 28, 1913.

1. **PARTITION: Interlocutory Judgment: In Control of Court until Final Judgment.** An interlocutory judgment in partition, declaring the rights of the parties and ordering partition, is under the control of the trial court and may be set aside or modified at any time before the final judgment.

2. ————: ————: **Reopening Case: New Evidence: Appeal.** Where, after an interlocutory judgment in partition, the court, upon a motion for a new trial, reopened the inquiry and invited further evidence, it was its duty to act regarding such new evidence so as not to leave the matter in controversy in such condition that its final administration would be inconsistent with equity and good conscience. If it failed in this, the delin-

Fogle v. Pindell.

quency is subject to correction on appeal, and it is the duty of the Supreme Court, in determining the propriety of the interlocutory judgment, to take into consideration the entire evidence.

3. ———: ———: ———: Foreign Statute as Evidence: Pleading. One who brings an action under a foreign statute must plead the statute; but where, as here, to a petition for partition the defendant answers that the land was bought by her husband with her money, that is the substantive fact, and therefore a statute of Kentucky which goes merely to show how the money was acquired should be received in evidence and need not be pleaded·

4. ———: Wife's Separate Property: Received by Husband: Presumption. The receipt of a wife's money by her husband is presumed to be for her use, and the burden is upon him to remove the presumption by evidence. It makes no difference in this respect whether he invests the money in real estate or keeps it in his pocket.

5. ———: ———: ———: Written Assent: Evidence: Burden of Proof. Land purchased by a husband with his wife's money acquired during the marriage by inheritance from a son, was charged with a trust in favor of the wife, and she does not, in order to sustain her title to the property, bear the burden of showing that she did not expressly assent in writing to the disposition of her money for the husband's use and benefit.

Appeal from Schuyler Circuit Court.—*Hon. Nat M. Shelton*, Judge.

REVERSED AND REMANDED (*with directions*).

*Higbee & Mills* for appellants.

The court erred in excluding the Kentucky statutes on descent for the reason that they were not pleaded. There was no question made that the statute produced and read in evidence was the Kentucky statute. That statute was simply a link in the chain of evidence to establish that the money paid for this land was Mrs. Pindell's money and she was not required to plead the statute. Excluding the statute because it was not pleaded was equivalent to overruling all other objections, and they were all made after the statute had been offered and read in evidence. Green

v. Association, 105 Iowa, 628; Gibson v. Railroad, 225 Mo. 473.

*Joseph H. Hall* and *Fogle & Fogle* for respondents.

BROWN, C.—This is a proceeding instituted by daughters of Michael M. Pindell, deceased, against the other heirs and the appellant Jennie Pindell, his widow, to partition a tract of land of 105 acres in Schuyler county upon which the deceased was residing at the time of his death, which occurred in May, 1905. On May 4, 1908, Mrs. Pindell filed her second amended answer admitting her marriage to the deceased and his death and raising the question involved in this appeal as follows:

"Further answering this defendant says that her husband bought the land described in the petition and paid the entire purchase price thereof with the defendant's money during their said marriage; that said money was her separate property and her said husband so used her said money and paid therewith in full for said land, and took title thereto in his own name on the . . . day of . . . 1888, without the defendant's written assent while she was his wife, and that he took title thereto and held the same in trust for this defendant until his death, as their homestead. That she and her said husband resided on said land until his death, and she has, ever since his death, resided upon and occupied the same as her homestead, and that she is in equity entitled to said lands in fee.

"Wherefore, she prays that she be decreed the owner of said premises in fee and for all proper relief."

Mrs. Pindell at the time of the trial was seventy-four years old and not able to be personally in court. The court having ruled that the burden was upon her to support the issues raised in her answer, she intro-

duced the deed of William H. Cowell and wife, dated November 7, 1890, under which her husband acquired the land in question. It recites a consideration of $1900 and the assumption of a mortgage of $250.

William H. Ross, from whom Cowell acquired the land, was introduced as a witness, and testified that Pindell, about sixteen years before, had told him that he and his wife had got over $5000 from the estate of his son Tom in Kentucky, one-half of which was Jennie's (his wife's); that he had bought this particular land with Jennie's money, and was going to buy the Wilkerson farm with his own half. He purchased the Wilkerson farm. The fall before he died Mr. Ross spoke to him about trading for the home farm, which is the land in controversy. With reference to this interview he testified as follows:

"And another time I wanted to trade with him and he said he could not trade it. He was talking about going to town and he said, 'I can't trade this farm. This farm belongs to Jennie.' He says, 'I ain't got a dollar in it.' He said, 'I will see her. I will talk with her. If she wants to come to town and trade I will see you again and will talk trade.' I said 'all right.' About a week afterwards I seen him. He said, 'Jennie won't trade. She won't trade for mine,' and he would not get to come to town. That that was hers and she was going to keep it as long as she lived. He said, 'I ain't going to insist on her selling it or trading it to go where she is not satisfied.'"

G. W. Patman testified that he had had several talks with Mr. Pindell about how he got the farm. He said he drew about $5000 from the estate of his son who had died in Kentucky, one-half of which was left to him and half to his wife, and that he was going to buy the farm in controversy with half of it. He bought it and afterwards bought the Wilkerson farm. He said he paid for the home farm with his wife's half of the money, and in speaking of the proposed

deal with Ross, he said it was Jennie's farm, paid for
with her half of the $5000 drawn from his son Tom's
estate in Kentucky, which was divided between him-
self and Jennie. This witness stated that he was an
intimate friend of Pindell, who was his wife's uncle,
and that he was acquainted with Tom, who died in
Kentucky.

Mrs. Rosenberger, a daughter of Mr. and Mrs.
Pindell, testified that her father drew $5000 at one
time from the estate of his son Tom and had $2000
from the same source before that. She also said that
her father had no money before he got this. Tom got
$5000 in the Louisiana Lottery and had $2000 before.

The respondents introduced no evidence. Upon
a suggestion made by the court that under the laws
of descent and distribution in Missouri the money
would not have been divided that way, the appellant
asked that the cause be passed until proof could be
obtained of the law of Kentucky, upon which the court
said: "I will give them time to hunt up the Kentucky
law." This was on November 10, 1908, and "after-
wards on November 20, 1908, during said November
term of said court and before counsel for defendants
were able to procure and produce in court a copy of
the statutes of Kentucky, on the law of descents in the
State of Kentucky, said court rendered judgment."
It found that the plaintiffs and defendants were each
entitled to take as heirs of the deceased, subject to the
dower and homestead rights of the widow, and ap-
pointed commissioners to set off the homestead and
dower, and to report at the next term of the
court, to which the cause was continued. The appel-
lants thereupon on the same date filed their motion to
set aside the said finding and have a new trial, assign-
ing as reasons therefor, among others, that under the
law and the evidence the appellant Jennie Pindell was
entitled to the relief asked in her answer, and that
under the statutes of Kentucky the entire estate, both

real and personal, of an intestate who died without descendants and unmarried, would pass to his father and mother if living, one-half to each. It also states that, for reasons set out in detail and claimed to be sufficient, defendants had been unable to produce these statutes at the trial. The motion was continued to the May term, "to allow defendants time to produce in court said Kentucky statutes . . . to be used on the hearing of said motion." At the May term the hearing was had in which the appellant offered and read a statute of Kentucky to the effect stated in the motion. The respondents then objected to its introduction for the following reasons: "For the reason it is not shown that there is a statute of Kentucky now in force. Second. For the reason that that paragraph might be modified by another paragraph, and for the reason he is offering it now upon a motion for a new trial, and it is therefore incompetent, and irrelevant, and does not tend to prove any issue in the case. Fourth. It is not offered on the trial of the case proper. Fifth. It is not pleaded in the case." The court sustained the objection, and excluded the statute "for the reason that it was not pleaded;" and overruled the motion for a new trial. This appeal is from the interlocutory judgment determining the rights of the parties.

I. This appeal is taken from an interlocutory judgment in partition determining the rights of the parties to the suit, as provided in the Act of 1895. [R. S. 1909, sec. 2038.] Our statutory partition is broad in its scope, requiring the inclusion of the interest of every person who upon any contingency may be or become entitled to any beneficial interest in the premises, and the final judgment is binding and conclusive upon all parties to the proceedings, and all persons claiming under them. [*Id.*, sec. 2587.]

The statute, however, although it provides that the interlocutory judgment shall declare the right, title and interest of the parties, petitioners as well as defendants, gives it no such conclusive force. [*Id.,* sec. 2572.] Although, as a matter of convenience, it gives the right to appeal from the interlocutory judgment, in so far as it determines the rights of the parties at least, it takes care to provide that no failure to appeal from such action shall prejudice the right

**Partition:**
**Interlocutory**
**Judgment.**

of a party to have the action reviewed on an appeal from the final judgment. It has, accordingly, been consistently held by this court that this judgment, declaring the rights of the parties, and ordering partition, is under the control of the court and may be set aside or modified at any time before the final judgment. [Aull v. Day, 133 Mo. 337; Akers v. Hobbs, 105 Mo. 127.] In Parkinson v. Caplinger, 65 Mo. 293, the court permitted a new party to be made and to file an answer setting up an interest in the property. Although this application was at the same term at which the judgment was rendered, the court said: "There is no prescribed stage of the proceedings in which this application is to be made. If presented during the pendency of the litigation, we think it is timely and within the power of the court to pass upon it." In the Aull case the court quotes approvingly from Elliott, App. Proc., sec. 83, as follows: "Until there is an ultimate judgment, the case is not finally disposed of, inasmuch as the trial court may change its rulings, award a *venire de novo,* grant a new trial, or make some such order, notwithstanding the fact that in other rulings it may have clearly manifested a purpose to carry its rulings into the ultimate judgment or decree." That case is replete with authorities which it is unnecessary to again incorporate into our records. The conclusion is that the interlocutory judgment stands merely as a

part of a pending proceeding, and is under the absolute control of the court.

In the exercise of this control the trial court, upon a motion for a new trial, reopened the inquiry and invited the presentation of further evidence. Having done this it was its duty to act with reference to such new evidence as it obtained, so as not to leave the matter in controversy in such a condition that its final administration would be wholly inconsistent with equity and good conscience. It was vested with jurisdiction to hear further evidence for the sole purpose of doing justice in its final judgment, and if it failed in this, the delinquency is subject to correction upon appeal to the same extent and for the same reasons that apply to any other judicial action. It follows that it is our duty, in determining the propriety of the interlocutory judgment, to take into consideration, as the trial court should have done, the entire evidence before it.

**New Evidence.**

II.   This leads us to consider its action in excluding the statute of Kentucky requiring the estate of the son to be distributed to his father and mother in equal parts. As we have already said, the court, in the exercise of its undoubted jurisdiction invited the offer of this testimony and was enlightened by its presentation, and should, therefore, have received and taken it into consideration unless there was some reason to the contrary other than the fact that it was presented out of time. The court recognized this duty, and in the interest of facilitating a full and fair review of its action, incorporated in the record the statement that its exclusion was because it was not pleaded, referring evidently to the answer of the appellant; so that the question is presented whether it was incumbent upon her to plead the statute as a part of the statement of her defense.

**Foreign Statute as Evidence.**

There is nothing more firmly settled than that one who brings an action founded upon the provisions of a foreign statute must set forth those provisions in his pleading. This is equally true, whatever may be the form of his action, or the nature of the liability. This is just as necessary as that in actions founded upon contract he should set forth the provisions of the contract upon which he relies. This is as true of the common law system of pleading as of our own code, which expressly provides that only the substantive facts necessary to constitute the cause of action or defense shall be stated. [R. S. 1909, sec. 1813.] Although in an action upon a contract it might be necessary to state the consideration upon which the undertaking of the defendant is founded, as, that it was paid in money, the substantive fact is the payment of the money, and it would be unnecessary to plead the manner in which the money had been acquired, although that might, under some circumstances, become important as a matter of evidence. In the present case the substantive fact is that the land was paid for by her husband with her own separate money. The manner in which this was acquired has nothing to do with the question, except as it may become important as a matter of evidence in determining whether the substantive allegation is true. The statute of Kentucky was important evidence to prove this, and having, in the exercise of its jurisdiction entered upon the investigation and invited the offer of this evidence, it should have been received, and we must now consider it.

III. The facts in this case cannot be said to be in dispute. The Pindell family was a large one, as is shown by the pleadings, and the assertion of one of them that the father had no money until after the

**Married Woman's Separate Property: Presumptions.**

death of their brother Tom, although easily susceptible of disproof were it not true, has not been denied or questioned; that he afterward purchased and paid for the farm in question as well as the Wilkerson farm is a matter the truth or falsity of which can be easily demonstrated. There is no attempt to question the neighbors who testified as to the statements of Mr. Pindell that the land in question belonged to his wife and was purchased with her money. All the sons and daughters of Mr. and Mrs. Pindell, who, presumably, were raised in the family and acquainted from observation with its history, and are now the adversary claimants to their mother, are silent, save one, who gives important testimony in her favor. The others have chosen to remain in the attitude of sitting silent and saying to their mother, "prove your right if you can." She has proved it up to the point which calls on them to speak.

It is said that the burden is on her to show that she did not expressly assent in writing to the disposition of her money for his own use and benefit. We do not so understand the law. The statute requiring such

**Written Assent to Appropriation by Husband: Burden of Proof.**

assent is founded upon the fact that in the family economy the wife has her own separate and important duties to perform, which in this case included the bearing and rearing of at least twelve children, and the husband in the occupancy, use, care and protection of her property is doing nothing more than his own duty for which he can claim no special advantage over her. The receipt of her money by her husband is presumed to be for her use, and the burden is upon him to remove the presumption by evidence; and it makes no difference in this respect whether he invests it in real estate or keeps it in his pocket. [Rice v. Shipley, 159 Mo. 399.] If during his lifetime he claims the property as his own, her written assent

that it should be so is a muniment of his title. His children seem to be now claiming under him, and from that standpoint it is a muniment of theirs and it is their duty to produce it. This land, having been purchased by the deceased husband with money of the wife acquired by inheritance from her son during the marriage, was charged with a trust in her favor. [James v. Groff, 157 Mo. 402; Johnston v. Johnston, 173 Mo. 91; Miller v. Slupsky, 158 Mo. 643; Rice v. Shipley, supra.] It results that the interlocutory judgment of the Schuyler County Circuit Court from which this appeal is taken is reversed and the cause remanded to that court with directions to proceed in accordance with this opinion.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.