# HARRIETT U. DALTON et al. v. WILLIAM SIMPSON et al; MARY SIMPSON, Appellant.

### Division One, March 12, 1917.

1. **HOMESTEAD: Money in Lieu of Dwelling.** The existence of the home, and not the money which represents its value, is the foundation of the homestead statutes. They refer only to the dwelling house for the family and the surrounding soil from which the sustenance of the home is to spring.

2. ————: **In Partition: Governed by Section 6713: Power of Court.** Since the Partition Act is silent as to homesteads, resort must be made to section 6713, Revised Statutes 1909, which is a part of the Homestead Statute, whenever lands in which a homestead exists are brought into partition. Under that statute the only power the court has is to sever it from the balance of the real estate sought to be partitioned.

3. ————: ————: **Section 6714.** The Legislature meant, by Sec. 6714, R. S. 1909, which authorizes the sale of the homestead in certain contingencies and which is the only provision of law by which it is possible for the courts to deprive the widow and minors of their homestead, to guard their rights with care. It cannot be used as a device by which adult heirs and other plaintiffs in partition may swallow the homestead or extinguish it by relegating the widow and minors to the value of the homestead or to the net income arising from such value.

4. ————: **Not Subject to Partition.** A homestead as such is not subject to partition. If it can be severed and set apart from the rest of the real estate, it cannot be sold at the partition sale.

5. **PARTITION: Severance and Subsequent Sale of Homestead: Bill of Exceptions.** Where the proceedings in a partition suit have been regular up to the time the report of the commissioners appointed to admeasure and set off the homestead has been filed, the court cannot thereafter order the homestead sold and the value thereof placed in the hands of a trustee for the use of the widow and minors; and if such an order is embodied in a judgment subsequently rendered ordering distribution, it as well as the judgment are for review on appeal, as matters of record proper, and a bill of exceptions is not necessary.

Appeal from St. Charles Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

REVERSED AND REMANDED (*with directions.*)

*C. W. Wilson* and *J. W. Wilson* for appellant.

(1) The widow of the deceased homesteader was and is entitled to have her homestead allotted to her in kind, inasmuch as it clearly. appears that the homestead was and can be allotted in a compact body, leaving the residue of the land in a compact body of 50.23 acres. R. S. 1909, sec. 6708-6714; Schaeffer v. Beldsmeier, 9 Mo. App. 444. (2) The only condition under which the statute authorizes the court to order the homestead sold, is in the case where the dwelling house, outbuildings, and lands in connection therewith, in which a homestead shall exist, shall exceed the value provided by the statute, and a severance of the homestead would greatly depreciate the value of the residue or be a great inconvenience to the parties interested, and it appears that such homestead cannot be occupied in severalty without great inconvenience to the parties interested in the homestead or the residue. R. S. 1909, sec. 6714; Schaeffer v. Beldsmeier, 9 Mo. App. 444. (3) If the homestead, as in the case at bar, can be occupied in severalty with perfect convenience and the residue can be used in severalty with perfect convenience, the mere fact that the land as a whole would sell for a little more if sold as one tract than it would bring if sold in two separate tracts, does not authorize the sale of the homestead against the will of the homesteader. The statute plainly bases the right to order the sale upon the proposition that it must "appear that the homestead cannot be occupied in severalty, without great inconvenience to the parties interested in the homestead or in such residue." (4) But if section 6714 applies to this case, then, if the court found the homestead could not be occupied in severalty, it should have fixed the value of the residue and afforded the homesteader the opportunity to pay the price of the residue, which she asked to be done. R. S. 1909, sec. 6714.

*W. R. Dalton* and *B. H. Dyer* for respondents.

(1) Where a homestead is a part only of an estate held in common it is subject to a proceeding in partition.

Beckner v. McLinn, 107 Mo. 289; Secs. 6714, 2559, R. S. 1909. (2) A motion for new trial or a motion to modify a decree must be filed within four days and if filed after four days, and especially if not filed until after the adjournment of the term at which the trial was had, it comes too late to perform any office in the case and no exceptions can be predicated thereupon. Smith v. Smith, 192 Mo. App. 105; Windes v. Earp, 150 Mo. 600. (3) Appellant having failed to file a motion for a new trial upon the rendering of the interlocutory judgment of partition and order of sale made at the June term, 1913, or to save her exceptions to such interlocutory judgment by a term bill of exceptions, such interlocutory judgment became final and is immune from attack at a subsequent term of the court. Windes v. Earp, 150 Mo. 605; Richardson v. Schuyler County, 156 Mo. 407. (4) Appellant having acquiesced in the ruling of the court rendered at the June term, 1913, until the succeeding November term thereof, and having failed to except to the interlocutory judgment entered at the June term, 1913, on August 8, 1913, and to save her exceptions by a timely bill of exceptions, will be held to have abandoned her exceptions and to have thereby contributed to the final judgment rendered in the case, and her attack on the interlocutory judgment made for the first time at the next succeding term comes too late to have any effect upon the interlocutory judgment. Blanchard v. Dorman, 236 Mo. 435; Simpson v. Scroggins, 182 Mo. 560; Reineman v. Larkin, 222 Mo. 156; St. Louis v. Lawton, 189 Mo. 474; State v. Larew, 191 Mo. 192; Windes v. Earp, 150 Mo. 600; Richardson v. Schuyler County, 156 Mo. 407; Moran v. Stewart, 246 Mo. 462; Mexico v. Barnes, 158 Mo. App. 612; Smith v. Baer, 166 Mo. 392; Asphalt Co. v. Ullmann, 137 Mo. 543; Bohn v. Lucks, 165 Mo. App. 701. (5) The statute authorizing the court to deal with the homestead and to order a sale of the whole premises if the case require it, and to apportion the proceeds between the parties and to make all such orders in the premises as shall be equitable and just, is an ample and full investiture of the

court with authority and jurisdiction to do precisely what the court has ordered and done in this case. Beckner v. McLinn, 107 Mo. 277; Secs. 6714, 6715, R. S. 1909.

BROWN, C.—This is a partition for about 91 acres of ground in St. Charles County, Missouri. Originally Harriet U. Dalton, John C. Brown and Lucy L. Brown were plaintiffs, and William Simpson, Seony Simpson, Frank Simpson, Bertha Simpson, Joseph Simpson, Lora Simpson and Beulah Simpson were defendants. The petition is as follows:

"Plaintiffs state that they and defendants are the owners in fee in common and in possession of the following described real estate in St. Charles County and State of Missouri, to-wit:"

(Here follows a description by metes and bounds of the land involved which constitutes a compact contiguous tract, although somewhat irregular in shape. The petition then proceeds):

"That plaintiff Harriet U. Dalton, is the owner of an undivided three-ninths interest in and to said real estate; that plaintiff John C. Brown is the owner of an undivided one-ninth interest in and to said real estate; subject to the inchoate right of dower of his wife, Lucy L. Brown; that plaintiff Lucy L. Brown is the wife of said John C. Brown and has an inchoate right of dower in the first two tracts above described; that defendant William Simpson is the owner of an undivided one-ninth interest in said real estate subject to the inchoate right of dower in his wife, Seony Simpson; that the defendant Seony Simpson is the wife of said William Simpson and has an inchoate right of dower in the first two tracts above described; that defendant Frank Simpson is the owner of an undivided one-ninth interest in and to said real estate, subject to the inchoate right of dower in his wife, Bertha Simpson; that Bertha Simpson is the wife of said Frank Simpson and has an inchoate right of dower in the first two tracts above described; that Joseph Simpson, Lora Simpson and Beulah Simpson, each own an undivided one-ninth interest in said real

estate; that said Frank Simpson, Joseph Simpson, Lora Simpson and Beulah Simpson are all minors and have no legal guardian or curators; that said real estate is not susceptible of division in kind without great detriment to the interest of the parties owning the same. Plaintiffs ask for the appointment of a guardian *ad litem* for said minors to look after their interest herein. Wherefore plaintiffs pray the court for a judgment for partition for said real estate in accordance with the interests of the respective parties hereto as herein set out and for an order for the sale of said land for the purpose of partition and for the distribution of the proceeds of such sale to the parties hereto according to their respective rights therein, and for such other and further orders and judgments as to the court may seem just and right."

The defendants were duly summoned at the November term, 1912, of the St. Charles Circuit Court, during which Osmund Haenssler, Esq., was appointed guardian *ad litem* of the four infants and answered as follows: "That he has not sufficient knowledge of the matters alleged in plaintiffs' petition either to admit or deny the same and asks that plaintiffs be required to make strict proof of the allegations and averments in their petition contained."

During the same term and on December 24, 1912, said cause was called and submitted on the pleadings and evidence, and the court entered its jugment defining the rights of the parties and for partition and ordered that the property be sold by the sheriff at the following March term, which was done on March 4th at public vendue for cash to John C. Brown, the highest bidder, for $1250; the thirty-five-acre tract last described in the petition being separately sold subject to the homestead rights of the widow and minor children for $110, and the remainder being separately sold to the same bidder for $1140. The sheriff made his report at the same term. On the 12th of the same month the appellant, Mary Simpson, widow of Wiley D. Simpson, filed in the court her motion to be made a party and to set aside the sale and for the assignment of homestead and dower, which

was sustained, the sale set aside, as was also the inter-locutory judgment rendered at the previous term, that proper steps might be taken to assign the homestead and dower. A new interlocutory judgment was entered ad-judging that the defendants Mary Simpson, widow, and Frank Simpson, Joseph Simpson, Lora Simpson and Beulah Simpson, the minor children of Wiley D. Simp-son, deceased, were entitled to a homestead in the prop-erty described in the petition, and appointing commis-sioners to set it out, and to make report of their pro-ceedings at the following June term. They proceeded to the performance of that duty, setting off for that pur-pose forty acres from the south side of the tract in a compact body on which was situated the dwelling house and appurtenances of the deceased owner, in which the widow and minor children resided at the time, and valued it at $1500. They filed their report on June 28th, and thereafter, at the same term, and on the 5th day of August, 1913, while the court was still in session, the plaintiffs filed their exceptions and objections thereto, which omitting the caption and signature is as follows:

"Come now the above named plaintiffs and object and except to the report of the commissioners appointed herein, filed in this cause on June 25, 1913, and move the court to disapprove said report and reject the same, and for ground for their objections to said report plaintiffs state that said commissioners in their said report have al-lotted and set apart to defendant Mary Simpson, widow, and Frank Simpson, Joseph Simpson, Beulah Simpson and Lora Simpson, minors, as homestead, 40 acres of land, as same is described in said report; that said 40 acres of land so set apart as homestead to said named defendants greatly exceeds in value the homestead to which said defendants are lawfully entitled, said 40 acres being not less than $2000 in value, whereas said defend-ants are entitled to a homestead not to exceed the sum of $1500 in value; that to set apart to said named defend-ants a homestead in kind out of the lands described in plaintiffs' petition and especially to set apart to said named defendants the 40 acres of land described in said

report as a homestead, will greatly depreciate the value
of the residue of the premises described in plaintiffs'
petition, which, are the lands sought to be partitioned by
these proceedings, and will result in great inconvenience
to the parties interested in such residue; that if the
whole of the lands described in plaintiffs' petition were
sold as one tract they would bring the sum of $3250, that
being the reasonable market value of the said lands taken
as a single tract of 90 acres, more or less, but that if
the 40 acres described in the commissioners' said report
and set apart by them as a homestead be severed from
the residue of said premises and said residue be sold
separately said residue of 50 acres will be so injuriously
affected by such severance of a homestead that the same
will not bring more than $750.

"Wherefore plaintiffs pray the court, the above stated
facts being considered, to set aside its interlocutory
judgment entered in this cause ordering that a home-
stead in kind be set apart to defendants Mary Simpson,
Frank Simpson, Joseph Simpson, Beulah Simpson and
Lora Simpson and that the court now order the whole
of the lands and premises described in plaintiffs' peti-
tion to be sold intact as one piece without the setting
apart of a homestead in kind to said named defendants
and that a trustee be appointed by the court to collect
and receive the value of such homestead in money, to-
wit, the sum of fifteen hundred dollars, out of the pro-
ceeds of the sale of said real estate, and that said trus-
tee be empowered to invest or loan out the said sum of
money and be ordered to pay over the income to be de-
rived from the same to said named defendants during
the widowhood of defendant Mary Simpson and the mi-
nority of defendants Frank Simpson, Joseph Simpson,
Beulah Simpson and Lora Simpson, and that all the bal-
ance of said proceeds of sale be distributed among plain-
tiffs and defendants according to their respective rights
in said real estate."

On the 8th day of August, 1913, said objections and
exceptions came on to be heard, and the court, after hear-
ing evidence, sustained them, set aside its last interloc-

utory judgment and entered a new one directing the sale
of the land as a whole to be made at the November term,
1913, to which the appellant excepted, but neither filed
nor took leave to file any bill of exceptions during that
term.

At the said November term and on the 3rd day of
November, 1913, appellant filed her motion to set aside
the said interlocutory judgment of August 8, 1913, and
to prohibit the sheriff from making sale of the premises
thereon because: (1) it was contrary to. law and the pro-
visions of the statute; (2) it appears from the record
and report of the commissioners that the homestead was
susceptible of allotment and separate use without incon-
venience to the occupant, either of the homestead or res-
idue of the land, and without material depreciation in
value of the residue; (3) the sale of the whole tract as a
single parcel was ordered without ascertaining and fix-
ing the value of the residue and according the owner of the
homestead the option and privilege of paying the ascer-
tained value of such residue as provided by law; (4) it
is illegal, unfair, inequitable and unjust in arbitrarily
and unconditionally requiring the whole tract to be sold
as one body without permitting the offering of the home-
stead tract and residue separately, so as to determine by
actual experience whether it would sell for more as one
body than in separate tracts; (5) because the court did
not give appellant the option and privilege of paying the
value of the residue and retaining the homestead as re-
quired by law; (6) the judgment does not permit the
proceeds of the homestead to be invested in the purchase
of another homestead. The foregoing objections are set
out with great detail in the statement of facts supporting
them, and the motion concludes as follows: "And the
said defendant, Mary Simpson, widow and homesteader
as aforesaid, prays the court for an order setting aside
the said interlocutory decree and order of sale, and sus-
pending the sale of the said property, until the further
order of this court; that, upon a hearing of the facts,
this court confirm and establish the report of commis-
sioners herein filed, setting apart the said homestead in

kind; or, if the court shall find that the homestead, as set off by said commissioners, exceeds in value the sum of fifteen hundred dollars, it appoint other commissioners to set off such homestead and report their proceedings to this court; that, if upon a full hearing of the facts, the court shall be of the opinion that a homestead cannot be set off in kind and occupied in severalty without greatly depreciating in value the residue of the said property, it proceed to hear the necessary evidence, and ascertain, determine, and fix the value of such residue, and give this defendant, the homesteader, the option and opportunity of paying to the other parties, or into court for their use, the value of such residue, and upon such payment, by its decree, vest the full title in and to such residue in this defendant; that, in the event the court finds that a homestead cannot be set aside in kind and occupied in severalty without greatly depreciating in value the residue of the said property, and that, after it determines and fixes the value of such residue, this defendant fails or refuses to pay such value and take the property and the court orders its sale, the court provide and direct, in its order, not only that the said property be offered for sale as one tract or body, but also that it direct that, at such sale, it be offered in separate tracts, and if it appear, on such sale, that the residue and the homestead shall sell for approximately as much when offered in separate tracts as when offered as one body, then the allotment in kind be confirmed and the proceeds of the residue be distributed to the parties according to their several interests; that, if the entire property be sold and conveyed, the court, in its order and decree, provide and authorize the fifteen hundred dollars, the value of the homestead, to be invested in the purchase and acquisition of another homestead for the use, occupancy, and enjoyment of the parties, and that this court, in its decree, make all such orders as shall be equitable and needful in the premises."

This motion came on to be heard on the next day (November 4th), was overruled, and appellant duly excepted. The sheriff proceeded on the same day to sell

the land at public sale, and the plaintiff Harriet U. Dalton being the highest bidder therefor at $2238.50 it was sold to her for that price.

The sheriff reported this sale to the court on November 10th and on the 13th day of the same month, while the court was still in session the appellant filed her motion to set aside the last sale and to set aside and modify the interlocutory decree of August 8, 1913, and confirm the report of the commmissioners theretofore made, setting out the homestead. This motion, in addition to repeating substantially the grounds set forth in the motion previously filed, and determined November 4, 1913, setting up inadequacy of the consideration received, and the fact that the last sale had demonstrated that the setting out of the homestead would not depreciate, for purposes of sale, the value of the residue of the land, which had brought more at the separate sale first held than at the last sale when the entire tract was sold without division. The motion concluded as follows:

"This defendant prays that said report of sale and said sale be set aside; that the order of sale and judgment of August 8, 1913, herein be set aside and that the report of commissioners heretofore herein filed allotting and setting off a homestead in kind, be approved and confirmed; or if the court be of the opinion that the value of the homestead as allotted in said report exceed $1500, it appoint new commissioners to set off a homestead in kind; that the court then order the residue of said land to be sold by the sheriff, so that full title to the same may be given, but in its order fix the value of said residue and give this defendant, the homesteader, an opportunity to buy the same at the appraised value, if it does not bring more at such sale, and this defendant offers to take said residue upon a full title thereto being made to her at the price and sum of $850; or if it appear more equitable and just in the judgment of the court, that this court set aside the said sale in so far as the homestead allotted in kind by the commissioners is concerned and confirm the report of commissioners, allotting the homestead in kind, but confirm the sale as to

the residue and order a deed for said residue to be made to the purchaser, John C. Brown, plaintiff herein, upon the payment to the sheriff of $755.75, the value of said residue, as shown by deducting the value of the homestead from the total price.

"Defendant asks for all other just and proper orders in the premises."

Thereafter at the same term this motion came on to be heard and was overruled, to which the appellant excepted. The court thereupon approved and confirmed the report of sale and made its final order of distribution, and appellant duly excepted. During the hearing of the motion last mentioned the report of the first sale already referred to was introduced in evidence, as well as the report of the commissioners thereafter appointed to set out the homestead. After motion for a new trial filed in due time and overruled this appeal was taken from the final judgment.

I. The elaborate argument of the respondents is devoted entirely to the question whether we have before us in the bill of exceptions which constitutes a part of the record, the facts necessary to the consideration of this case upon its real merits. This, in the view we take, seems unimportant. The reasons for our conclusions in this respect will sufficiently appear as we proceed to notice what seem to us to be the real questions in the controversy.

Bill of Exceptions.

II. The suit was originally instituted to partition ninety acres of land of which Wiley D. Simpson died seized, upon which was situated the dwelling house and appurtenances where he then resided with his wife and children, four of the latter being minors at the time of the trial. The parties, plaintiffs and defendants, were his children or their representatives in interest. The widow who, with his four minor children, was living in the family residence, was not made a party, the petition being framed upon the theory that thirty-five acres of the land, including the dwelling, had been set off to her and the minors as a homestead by the probate court, and

Sale of Homestead in Partition.

the sale of this tract, subject to the homestead, together with the remaining fifty-five acres, was asked.

The suit was returnable to the November term, 1912, of the St. Charles Circuit Court, at which an interlocutory judgment was entered defining the interests of the parties according to the petition and ordering the sale of all the land subject to the assumed interests of the widow and minors in the thirty-five acre tract. The sheriff sold the land to the plaintiff John C. Brown for $1250 subject to the homestead interests, and upon the coming in of his report at the March term, 1913, the appellant filed her motion to be made a party and to have the homestead set off, which had not in fact been done. She was admitted as a defendant, the sale and interlocutory decree were set aside, and a new interlocutory decree entered appointing commissioners to set out the homestead. They set off forty acres of the land, including the dwelling, and reported at the June term.

It was then that this trouble began. The plaintiffs filed exceptions to the report, asking that the interlocutory decree entered at the March term be set aside; that the entire land be sold in a single body; that $1500 of the proceeds be placed in the hands of a trustee, to be appointed, to invest the same and pay the income to the parties who would from time to time be entitled to the homestead. This motion was sustained, the report of the commissioners set aside and a resale ordered as asked, and the question now presented is the propriety and validity of that decree.

Before the sale under this last order at the November term the appellant filed her motion to prevent it, and after the sale filed a similar motion to have it set aside. In both these motions she asked for the assignment of her homestead.

The homestead laws are *sui generis*. Their object is to preserve inviolate a modest home for the family, which is the potential unit of civilization. They refer only to the roof that covers it, and the surrounding soil from which its sustenance is assumed to spring. When these are converted into money its existence ceases, and

can only be restored by its reconversion into house and land. This principle is the stone which is the head of the corner of all statutory constructions relating to the subject. The existence of the home and not of the money which represents its value is the foundation on which such statutes stand. They must be construed in harmony with that purpose, and must be carefully scrutinized before they can be held to intend its defeat.

Our own statutes leave no room for uncertainty in this respect. The article relating to partition, under which this suit was brought, describes with great particularity the estates subject to its provisions, but is silent as to the homestead (R. S. 1909, sec. 2559); so we must go to the homestead law for information as to the duty and powers of the court with reference to it in such proceedings, and find them concentrated in section 6713 of our present Revision. It is as follows:

"Whenever, in any case not in this chapter otherwise provided for, it shall become necessary, in any proceeding at law or in equity, to sever or set out any homestead from other real estate, the court in which such proceedings shall be pending may appoint three commissioners to appraise and set out such homestead, which commissioners, after being sworn to the faithful discharge of their duties, shall appraise and set out such homestead in the same manner as is provided in this chapter for setting out homesteads in case of the levy of execution, and make report of their doings to such court, which report shall be confirmed by such court, unless good cause be shown to the contrary; and a record thereof shall be made in the records of lands, where a deed of such homestead would by law be required to be reported, which shall operate as a severance of such homestead from such other real estate."

This court has not left us without authority that this section means what it says, no more, no less. In Simpson v. Scroggins, 182 Mo. 560, 571, referring to it we said:

"Doubtless in this partition proceeding, when the court ascertained the existence of a homestead, it pro-

ceeded to sever it from the balance of the real estate sought to be partitioned, in pursuance to the provisions of the foregoing section. In this character of proceeding, that was the only power the court was authorized to exercise."

In the later case of Brewington v. Brewington, 211 Mo. 48, the heirs asked for the sale in partition of the homestead in connection with contiguous lands, alleging that the value of both would be greatly depreciated by a separate sale. This the trial court refused, holding that the homestead was not subject to partition *in that action,* and this court in sustaining its judgment said: "That a homestead may be set out by a partition proceeding, no one questions; but in this case the homestead has been set out and the question is whether, having been set out, it may be partitioned among the heirs prior to the youngest attaining its majority?

"That a homestead, as such, is not subject to partition results from the inherent character of the estate and the purpose it subserves under the policy of our laws. [Rhorer v. Brockhage, 86 Mo. 544; Simpson v. Scroggins, 182 Mo. l. c. 571, 574; Quail v. Lomas, 200 Mo. l. c. 687.]"

That case coincides in all respects with the one before us. It comments on Beckner v. McLinn, 107 Mo. 277, and so far as the opinion in that case implies a contrary doctrine, necessarily overrules it.

The Legislature in the next section (6714) gives emphasis to its intention to limit the power of the court in partition cases, as well as in all other proceedings in which other interests are involved, to meddle with the homestead otherwise than to detach it in kind from the subject of the litigation, so that the interests of the widow and children in its preservation and devotion to the beneficent purpose for which it was created might not be smothered among interlocking issues. It foresaw that circumstances might arise in which the protection of these interests would require the sale of the property, and section 6714 was enacted to safely provide for such contingencies. It provides that: "Whenever any dwell-

ing house, outbuilding and the land in connection there-
with, in which a homestead shall exist, shall exceed the
respective value mentioned in section 6704, and a sever-
ance of such homestead would greatly depreciate the
value of the residue of the premises, or be of great in-
convenience to the parties interested either in such res-
idue or in such homestead, either party may apply to
the circuit court by petition, setting forth the facts, for
relief; and upon the hearing of such petition, if it shall
appear that such homestead cannot be occupied in sev-
eralty without great inconvenience to the parties inter-
ested in such homestead or in such residue, the court
may order such homestead to be transferred to such oth-
er parties, and the payment of the value of the home-
stead interest to the owner thereof; or, at the option
of such owner, may order such other parties to transfer
such residue to him, and order him thereupon to pay
such other parties the value thereof, to be fixed by the
court; or, if the case require it, the court may order a
sale of the whole premises, and apportion the proceeds
between the parties; and such court may make all such
orders in the premises as shall be equitable and needful."

This is the only provision of the law by which it is
possible for the court to deprive the widow and minor
children of the deceased householder of the title vested
in them by the provisions of section 6708, and it guards
their rights with care.

There are many cases we can imagine in which this
provision may be necessary and useful, but we find noth-
ing in it that indicates the intention of the Legislature
to nullify the purpose of the law by forcing a sale be-
cause contiguous lands may have a sentimental value
from their proximity to a cottage wth its curtilage and
buildings. We can imagine that if the cottage itself rep-
resented the full measure of value allowed for a home-
stead, it might be just and reasonable to give the widow
and children an opportunity to purchase these append-
ages, which would have their real value from their con-
nection with a home; or, if she should be unable to do
so, to give the persons to whom they would go an op-

portunity to purchase the cottage which, as a home, would give them their value; and the Legislature in the section we have just quoted has shown its foresight with respect to this and other similar conditions that might arise by authorizing a suit in which the widow and children shall have the privilege or "option" to save their home by the purchase of the curtilage. This must be done in a proceeding by petition for·such relief, "setting forth the facts," and cannot be made a device by which the plaintiff in a partition suit may swallow the homestead as is attempted in this case. This widow availed herself of every opportunity to deny the power of the court to do this and to demand her rights. She offered to purchase the entire farm outside the homestead, either at a valuation to be fixed by the court, or at a price to be ascertained by actual experiment. On what principle the court, assuming to act under the provisions of section 6714, did this, does not appear. The reason which actuated it in finally approving a sale by which the outside lands, sold in connection with the homestead, brought less than had been realized in a separate sale, does not appear, nor do counsel attempt to justify it in argument. The judgment stands here simply as the culmination of an attempt to bar the homestead right of the widow and relegate her to a net income of perhaps seven dollars per month instead of the roof and ground to which she had the right to look for shelter and sustenance for herself and the children. It must look to the law alone, unaided by any principle of equity, for success.

III. It is true, as contended by respondent, that all matters of exception taken upon the trial of a partition case resulting in the "judgment that partition be Errors made," and declaring "the rights, titles and Manifest By Record. interests of the parties," must, like all other exceptions, be saved by bill or leave to file a bill during the same term. [Blanchard v. Dorman, 236 Mo. 416, and cases cited.] It is equally true that the interlocutory judgment is a part of the record which we are called

upon to examine, and of the judgment which must be affirmed, reversed or modified by this court. Had the appeal been taken directly from it the question would have been presented whether it is sustained by the record proper before this court; and the same question arises in this appeal from the final judgment of which it is a part, and which is dependent upon it for support.

The petition discloses on its face the facts necessary to determine that question. It states that a homestead had been assigned from the very land in question, but does not ask for its sale, nor is the appellant made a party. In the condition of the pleadings as they then stood no foundation was laid for either the setting off of the homestead or for its sale, nor were the parties present to authorize such proceedings. At the March term these conditions were changed by the coming in of the appellant as a party, the setting aside of the original judgment, and the entry of the new judgment that the homestead be set off to her and the minors, which was done by the commissioners appointed for that purpose, who reported at the June term.

Up to that point all the proceedings had been regular so far as the interest of the appellant is concerned. She had got what she asked and was entitled to, and the action of the court up to the time of the filing of the report should stand. The motion then filed by the plaintiffs set out fully the right of appellant and the children to the homestead, and thus, as we have seen in the preceding paragraph, negatived the right of the court to make the order of sale, which was therefore irregular and erroneous upon the record proper and should be set aside. For this purpose it was under the control of the trial court until, with its record infirmities, it became merged in the final judgment we are now reviewing. [Aull v. Day, 133 Mo. 337; Fogle v. Pindell, 248 Mo. 65, 71-2; Davidson v. Real Estate Co., 249 Mo. 474, 493-6.] The case last cited is rich in the citation of authorities directly applicable here. The question here is whether the final judgment is supported by the record upon which

it was entered and upon which it must stand for its regularity.

It is unnecessary for us to decide whether or not, had this motion been a petition under section 6714, it would have been insufficient on the ground that it stated no facts to support the conclusion in which it was based. It is a proceeding in this case, and must stand or fall accordingly.

Having arrived at this conclusion it is unnecessary to deal at this time with the subsequent proceedings of the trial court as shown by the record, including the bill of exceptions taken during the November term, 1913.

We therefore reverse the judgment of the St. Charles Circuit Court, and remand the cause to that court with directions that all orders and judgments in said cause made subsequently to the coming in and filing of the report of the commissioners appointed by said court at its March term, 1910, to admeasure and set off to the appellant and minor children of Wiley D. Simpson a homestead in the premises therein described, be set aside, so that said cause shall stand in said court upon said report, with leave to the parties respectively to proceed further with reference thereto as they shall be advised; and that the court proceed to final judgment in said cause in accordance with the views herein stated.

*Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur.