MARY SPEISS v. ANNA BARBARA SPEISS.[1]

June 24, 1921.

No. 22,282.

**Cancelation of instrument — no resulting trust — judgment sustained by record.**

Plaintiff was the lawful wife and sole heir of George J. Speiss when he died the record owner of the real estate involved in the action. Before his death he had conveyed direct to defendant an undivided one-half thereof by deeds which she recorded after such death. Subsequent to his marriage to plaintiff, he entered a bigamous marriage with defendant and continuously thereafter cohabited with her. The whole of the real estate mentioned, consisting of his homestead in the city and an 80-acre farm, is claimed by each party to the suit. It is *held*:

(1) By virtue of section 6706, G. S. 1913, the absolute title vested in George J. Speiss when the real estate was conveyed to him, even though the purchase price was paid by defendant.

(2) She cannot have a constructive trust or a trust ex maleficio declared, for the findings, amply sustained, are that she knew of and acquesced in the title being taken in the name of George J. Speiss, and that she knew from the start that her relations with Speiss were bigamous.

(3) The burden was on defendant to prove that her money paid for the real estate involved. She did not sustain this burden.

(4) The findings which do not harm, but rather justify, greater relief than appellant otherwise could have, cannot be complained of by her.

(5) The record justifies the judgment rendered.

Action in the district court for Hennepin county to cancel two deeds on the ground that they had been obtained through undue influence and fraud and to have the title to the real estate confirmed in plaintiff. The facts are stated at the beginning of the opinion. The case was tried before Dickinson, J., who found that plaintiff was the lawful wife of George J. Speiss and his sole heir at law; that at the time of his

[1]Reported in 183 N. W. 822.

death he was the owner and in possession of an undivided one-half interest in the premises and that defendant was the owner of an undivided one-half interest therein. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*C. C. Joslyn* and *Charles B. Elliott*, for appellant.

*Frank H. Morrill* and *Mead & Bryngelson*, for respondent.

HOLT, J.

George J. Speiss died intestate in 1918. It appears that in September, 1881, plaintiff, then 14 years and 8 months old, was married to him. They lived together some six weeks, after which she, because of his failure to support her, was compelled to go to her brother, where in February, 1882, she gave birth to a child. The following June he brought suit to annul the marriage on the ground that she had fraudulently induced him to marry by falsely representing that she was pregnant by him. The action was tried in January, 1884, and terminated in her favor. The parties were never divorced. It cannot be controverted that plaintiff remained the lawful wife of Speiss until his death, and was his sole heir, their child having died before Speiss.

In November, 1883, Speiss was married to defendant, hereinafter designated by the name of Barbara. From that time on until his death these two parties cohabitated as husband and wife. When Speiss died he held the record title to a building on Lake street in Minneapolis, which was then his homestead, also to an 80-acre farm near Robbinsdale. But it appears that Barbara, after his death, placed on record two deeds from him as grantor to her as grantee, conveying an undivided one-half interest to each of said premises. Plaintiff brought this action to cancel these two deeds, on the ground that they had been obtained by undue influence and fraud, and to have the title to the whole of said real estate declared to be in her. Barbara answered, denying plaintiff's title, and, as a counterclaim, alleging that the properties had been bought and paid for by her, and that Speiss, without her knowledge or consent, had fraudulently taken the title to himself; that by threats and cruelty he had coerced her into permitting the title to remain in him without consideration, and, during all their cohabitation, by threats and by false and fraudulent concealments compelled

her against her will and judgment to place her money and property in his possession, and that he had represented himself as a single man at the time she married him, she never knowing to the contrary. She asked that she be decreed the owner of the real estate and that plaintiff has no interest therein. The reply alleged that Speiss and Barbara had settled their property rights subsequent to 1915. The trial resulted in a judgment that plaintiff and Barbara each own an undivided one-half of said premises. Barbara alone appeals.

The findings are vigorously assailed as without support, as made upon issues not presented by the pleadings, and as warranting a different judgment from that ordered. The findings are somewhat exuberant. But it is plain to us that those most severely criticised as beside the issues and unsustained are the ones deemed necessary by the learned trial judge in order to grant Barbara the whole of the relief she did obtain.

The farm was bought for $10,000 in October, 1907; the full purchase price was paid and the deed delivered to George J. Speiss, as grantee, on November 11, 1907. The home was got in 1910, in a trade for a former home of the parties on Crystal Lake avenue, Minneapolis, $1,000 being paid in addition. The title to the former home was in George J. Speiss, and he also took title to the one now in controversy. Assuming that Barbara's money paid for all this real estate, the absolute title vested in Speiss under section 6706, G. S. 1913, which is: "When a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance." With the exception of the trust reserved to creditors of the one paying the money by section 6707, the title of the alienee is immune to attack, unless a resulting trust or trust ex maleficio may be declared under section 6708, G. S. 1913, reading: "Section 6706 shall not extend to cases where the alienee named in the conveyance has taken the same as an absolute conveyance in his own name, without the knowledge or consent of the person paying the consideration, or when such alienee, in violation of some trust, has purchased the lands so conveyed with moneys belonging to another person."

Barbara is, no doubt, excluded from predicating any title upon the claim that her money paid for the premises by said section 6706. This statute has often been considered and construed, the last case being Nelson v. Nelson, supra, page 285. And our conclusion is that two findings preclude her from asserting any rights to the property under said section 6708. The court found that she knew that the title was placed in Speiss when the deeds were made and acquiesced therein, and that she knew from the start that her relations with Speiss were bigamous and unlawful. We think both findings are sustained. Ever since the parties came to Minneapolis in 1900 or 1901, the bank accounts, with certain exceptions hereinafter noted, were in the name of Speiss, all mortgage loans, and they were many, for he held over 12 unsatisfied mortgages when he died, were to him as mortgagee, and in the deed to every piece of real estate bought in this state by them, or either of them, he was named grantee. In an action brought by her for divorce in 1914, she alleged, in substance, that she knew that he banked and loaned the money in his name and took the title to the land purchased to himself. Of course she averred that her acquiescence was coerced and forced. There is no credible testimony to that effect. On the witness stand she simply denied that she knew that he had taken the deeds in his name.

Nor do we think that Barbara has shown that Speiss took the conveyances in his name in violation of some trust so as to come under the statute, for in this case such contention would have to be based largely upon the claim that he had fraudulently palmed himself off to her as a single man when she married him. In the cases of Davis v. Cummins (Mo.) 195 S. W. 752, and Shrader v. Shrader, 119 Miss. 526, 81 South. 227, cited by appellant, resulting or constructive trusts were found under which a woman, who had unknowingly contracted a bigamous marriage, was awarded title to land bought with her money and deeded to the one who had deceived her into the marriage by falsely representing himself as single. In each case the court places the decision on the ground that the fraud practised, in representing himself as single when he was not, and then, under the pretense of being her lawful husband, taking advantage of the opportunity to handle her money and take the title, created a constructive trust or a trust ex maleficio. Such is not the case here.

We are satisfied of the correctness of the finding that Barbara knew that neither she nor Speiss could lawfully marry when they went through the ceremony. From 1879, when Barbara married Balthasar Huber, until after 1884, she and some of her relatives lived and did business in the immediate neighborhood of where Speiss and his family, and plaintiff and her family resided in Pittsburgh, Pennsylvania. They were all of the same nationality. When Speiss brought his action to annul his marriage to plaintiff, it evidently attracted attention on account of the charges made in the complaint against her father. Barbara admits reading of the trial in the German newspapers. The action was started over a year previous to the time Barbara and Speiss went through the marriage ceremony. She testified that she thought it was another Speiss. But it is significant that they were not married in Pittsburgh, or the county where Pittsburgh is located, but went to Beaver county, and then gave their residence as in Youngstown, Ohio, where neither one had ever lived. Nor can Barbara well plead duped innocence. Her first husband died shortly after the marriage. She then, in 1879, married Balthasar Huber. She thinks he obtained a divorce. There is no credible evidence of that fact. Between the time she married Huber and the time she married Speiss, she married and lost by drowning one Seibert. Shortly after Huber's death, and in 1901 Barbara hurried from California to Pennsylvania to claim and obtain a widow's share in his estate.

Barbara's life work since about 1895 has been fortune telling. It would not be strange that, after such a long practice in duping thousands to take stock in and pay for what she knew to be worthless fibs, she would attempt to deceive the court as well. Her testimony contains inherent improbabilities. It also displays a great deal of shrewdness in evading damaging facts. She may not be entirely at home in the English language, and says she never learned to read or write it, yet her experience has been varied. She has resided in many different states and cities, has traveled extensively, and has had many business transactions in her own behalf, especially prior to 1890. From her living in the same neighborhood as plaintiff, from the evident desire to keep her marriage with Speiss from the records of her place of residence, from her claiming rights as Huber's widow, and from her admit-

ted knowledge of the trial of the marriage annulment case between Speiss and plaintiff, we think the finding warranted that Barbara was aware before she married Speiss of the illegality of the proposed union.

The above disposes of the appeal, without considering whether the money that paid for the property was Barbara's. But we think the finding that that money was the joint property of Speiss and Barbara is not without reasonable support in the evidence. The burden was on Barbara to show that the consideration paid for the home and the farm was hers. We do not think the authority relied on by appellant in Fogle v. Pindell, 248 Mo. 65, 154 S. W. 81, is to the contrary, nor is it in point, for in that state is a statute which requires the wife's written consent to the use of her funds by the husband for his use or benefit. The court found that Speiss and Barbara did business upon the understanding, in effect, that they were partners or joint owners to share equally. Their cohabitation being meretricious, their property rights were not affected by any law governing those rights as between husband and wife.

That Speiss, in what he did in respect to the money and property, was not the mere agent of Barbara, is clear. Had he been such a drunkard and spendthrift as she now claims, she certainly would not have selected him as agent. There is no testimony that he ever was requested to account to her as agent for any transaction. The rent from the farm was paid monthly to him, so was the rent for the store located on the homestead, and he collected the interest on the mortgages. There is no pretense that he was requested to turn this over to her or account for it. The same pertains to the bank account. He seems to have deposited, drawn and invested the considerable funds that came to his hands, without let or hindrance from Barbara. It is true that she had accumulated some property and money before they began their relations, and she testified to being worth some twelve or fifteen thousand dollars when they left the east. After that they lived one year in Florida, some time in Indiana, California and other states before coming to Minnesota. She admits he received five acres of her Pennsylvania farm, which he traded for land in Florida, this in turn for property in Ohio and Indiana, and finally the Indiana farm went for a peach orchard in California. The last trade was set aside by

the court for his fraud, and she asserts that the net result of his efforts was nothing at all. And worse, that she was always compelled to support and clothe him and forced to furnish him money for a continuous jag. She says he never earned a dollar. He is not here to deny her assertions, which are so strong as to make them improbable. After they came to Minneapolis, frequent tours were made to other states where she plied her fortune telling. He usually went along. They stayed for months, and she says brought large sums back, sometimes as much as $8,000. She is silent as to who arranged the trips, who procured the place or rooms for the operations, or who advertised the business. There is positive evidence indicating the correctness of the trial court's conclusion of an understanding to equally share in what was accumulated. Speiss in 1912 opened an account in a savings bank in the name of Barbara in trust for himself, in which account there was over $5,000 in February, 1918. Another account was opened in 1908, in the name of George J. Speiss, in trust for Barbara, in which there was over $5,000 on February 8, 1918. It seems that on the last named date he drew $5,000 out of each account and purchased two liberty bonds of $5,000 each. There is testimony that he intended one for Barbara and one for himself. Then the deeds executed to Barbara of an undivided one-half of the real estate evidence the carrying out of an agreement to share or divide the accumulations equally.

It is said that the court found that the relations between Speiss and Barbara were confidential, therefore a trust resulted. The finding is not of confidential relations as husband and wife, but in respect to the understanding had between them in their bigamous enterprise that they should share equally in property accumulations. This finding, as well as the one of a division actually carried out in accordance with this understanding, was really essential to award Barbara a share in the home, for, of course, the deed of Speiss thereto, without the signature of his lawful wife, was void. So even if the reply did not sufficiently plead a settlement, it was of no consequence to Barbara. But, that aside, the evidence thereof was properly received on the issue of the ownership of the funds that went into the property, and the finding at any rate was distinctly helpful to Barbara, though not necessary to plaintiff.

In taking leave of the case it may not be amiss to call attention to the unreliability of Barbara, and her case almost entirely hinges upon her testimony. She positively maintained, and had a boon companion verify, the highly improbable story that to pay for the farm she counted out and gave Speiss $10,000 in paper money, which she had for a long time carried on her person. We think it conclusively appears that this testimony was wilfully and knowingly false. The farm was paid for in November, 1907, when there was a panic threatened. The banks were unwilling to let large sums be withdrawn, and the proof is beyond controversy that the farm was paid for in this manner: George J. Speiss had a bank account of $900 in one bank which was closed and transferred to the seller of the farm. He had one of $5,000 in another bank, which had been started in 1904, which was likewise transferred. No money was actually handled or paid to the seller except the $100 in gold in October, when the contract of the sale was made. Speiss also assigned a note and mortgage of $1,200, and a mortgage existed on the farm in the sum of $2,800. Speiss, in closing the deal and receiving the deed, paid over no money to the seller, except perhaps a trifling amount in the adjustment of interest and in the discount of the mortgage. So upon a very vital point Barbara was knowingly wrong.

We think defendant Barbara has no reason to complain of the judgment. She perhaps has fared better than the record really justifies, were it not for the findings which appellant finds fault with as being outside of the issues of the pleadings before the amendment ordered by the court.

Judgment affirmed.