## WILLIAM P. ANDERSON V. A. McKAY.

The act of 2d February, 1860, to define the homestead, reads as follows: "The homestead in a town or city, exempt from forced sale, is hereby declared to be the lot or lots occupied or destined as a family residence, not to exceed in value $2,000 at the time of their destination as a homestead, nor shall the subsequent increase in the value of the homestead, by reason of improvements or otherwise, subject the homestead to forced sale." (Paschal's Dig., Art. 3928.) It may be admitted that the act intended to exempt everything for the beneficial enjoyment of the homestead, including lumber for building on vacant lots; but it must be shown how and when the lots and the lumber were destined for such a purpose.

ERROR from Panola. The case was tried before Hon. REUBEN A. REEVES, one of the district judges.

All that is necessary in the record is set forth in the opinion. The injunction was dissolved upon motion, without any answer by the defendant, so that the case turned upon the sufficiency of the petition to prevent the sale of lumber charged to be destined for 'the homestead. The plaintiff prosecuted error.

*A. W. De Berry*, for plaintiff in error, cited the homestead law of 1860. (Paschal's Dig., Art. 3928.)

This act not only fixes the value of a homestead, but declares what is a homestead, that is, a lot or lots occupied "or destined as a homestead" are exempt. The petition shows that the lots mentioned were "destined" as such, and also, in aid of the mere statement of the fact, states facts which show that it was so "destined."

If the lots were exempt from forced sale, everything necessary to their beneficial enjoyment is also exempt, although not expressly included in the words of the statute. (Cobb v. Coleman, 14 Tex., 594.) The facts stated in the petition make a stronger case than the one referred to above. In this case the petition shows clearly, that without the property levied upon in this case it would be im-

possible for him to use the lots as a homestead.  It is not only necessary, but indispensably so.  It must, therefore, be exempt; otherwise, in this case, the party will be entirely deprived of the benefit of the law passed for the protection of families in the peaceable enjoyment of a home.  But, if a different rule is adopted, a man who is the head of a family is effectually deprived (if indebted) of the privilege of building or improving a home.  If, however, he can buy a place already improved, and can get possession before it is seized and sold by a creditor, he will be protected.  If not, he is not allowed to build for himself; because he would be compelled to buy lumber and other materials, and place them on the lot or place occupied by him as a homestead, and in doing this the property so intended would be liable to be seized and sold before it could be removed from the mill to the place where it was to be used.  Such a rule, so unequal and unjust in its operation, was certainly never intended by the legislature to be adopted or practiced.  The object of the legislature must have been to allow a family to have a home free from the power of creditors.  It certainly did not intend that he should be compelled to buy his home already improved, and not be allowed to build or improve one; but this would certainly be the effect of the law.

The lots cannot be occupied before improved, but they may be "destined" as a homestead before any buildings are placed upon them; hence the words used are "occupied or destined."

*W. R. Poag*, for defendant in error.—Before the passage of the act of the 2d of February, 1860, the lands or lots in a town or city exempt from forced sale must have been actually occupied or resided upon by the family; in other words, they must have been the homestead.  (Franklin v. Coffee, 18 Tex., 413.)

The act above alluded to did not exempt, nor was it the

intention of the legislature to exempt, any other land, or town or city lot or lots, from forced sale, than such as were already exempt by the provisions of the constitution.

Article 22, general provision of constitution of Texas, exempts the homestead in the country, not to include more than two hundred acres, no matter what may be the improvements thereon or the value thereof.

The homestead, however, in a town or city, was only exempted to the value of $2,000; if it should at any time exceed that value, the excess was liable to be subjected to debts. (Wood v. Wheeler, 7 Tex., 13.)

The case of Cobb v. Coleman, 14 Tex., 594, is referred to as in point by the appellant. In that case, Wagoner was in the actual possession and use of the bridle, saddle, &c.; not so in this case. The lumber was not even deposited upon the lots, but all rested in mere intention.

In the case of Cobb v. Coleman, the court, it seems to me, put the exemption upon the ground that the bridle, saddle, &c., were implements of husbandry, or apparatus of trade. Chief Justice HEMPHILL uses the following language: "Now, what more necessary implement of husbandry than a bridle to plough a horse? or what more necessary apparatus can there be to any trade than a saddle to the owner of a horse?"

WILLIE, J.—The defendant in error obtained a judgment in the district court of Panola county against William P. Anderson, the plaintiff in error, for the sum of $112 80. An execution issued thereon, and the sheriff of said county levied it upon a lot of lumber belonging to said Anderson, and a writ of injunction was sued out to restrain the sheriff from proceeding to sell the same. The material allegations of the petition for injunction were, that the petitioner was a married man, and was with his family living in a rented house in the town of Carthage, in said county; that he had bought two lots in said town, and that these lots were, be-

fore and at the time of the levy, destined by petitioner as a homestead for himself and family, and that he had ever since destined them to that use; that these lots were not worth more than $500; that the whole of the lumber levied on was, previous to said levy, procured by him for the special purpose of building a dwelling-house upon said lots; that he still intended to use said lots as a homestead, and as such he selected the lots and the lumber, and has never at any time abandoned this intention; that said lumber is suitable for the purpose of building a dwelling-house; and that he has not, nor did he have at the time of said levy, any materials of that kind with which to build a house without the aid of said lumber, and, if deprived of it, he will be left without a house.

To this petition a general demurrer was sustained in the court below. The injunction was dissolved, and judgment was entered up against Anderson and his sureties for the amount of the execution and the costs of this suit. The plaintiff in error excepted, and brings the judgment to this court for revision.

The statute of 2d February, 1860, enacts, "That the homestead in a town or city exempt from forced sale is hereby declared to be the lot or lots occupied or destined as a family residence, not to exceed in value $2,000 at the time of their destination as a homestead, nor shall the subsequent increase in value of the homestead, by reason of improvements or otherwise, subject the homestead to forced sale." [Paschal's Dig., Art. 3928.]

It is contended by the plaintiff in error that the law, having exempted from forced sale the town or city lots occupied or destined for a homstead, also exempts everything necessary for their beneficial enjoyment. That in case the lots are vacant, lumber for the purpose of building a dwelling-house, &c., upon them is necessary to their beneficial enjoyment; and that as the exemption as to the lots begins from the time they are destined for a family resi-

dence, it must begin also as to the lumber from the time it is destined for such building purposes. It was said in Cobb v. Coleman, 14 Tex., 594, that the exemption of a horse from execution included also a saddle, bridle, &c., because they are necessary for the beneficial enjoyment of the horse. We may admit that the same rule applies to the homestead, and that personal property intended for its improvement is exempt from forced sale; and yet the allegations in the present petition would not be sufficient to entitle the plaintiff to the relief he seeks. He does not set forth the time when the lumber was purchased, nor when it was set apart to be used in building upon the premises. It does not state even the time when the lots themselves were first destined for the future residence of plaintiff and his family. It does not show that he had ever taken any other steps towards building upon the lots except to purchase this lumber, or that he would have taken such steps but for the interference of the sheriff. For aught that appears from the petition it may have been purchased many years previous to the levy, and have been permitted to lie idle and unused, the owner intending at some future and undetermined day to build him a house therewith. It certainly is not sufficient that a party has purchased a lot of lumber at some time in the past, which he intends at some day in the future to use in building him a home. If so, the mere mental reservation of such property for use upon the homestead would enable the owner to protect at different times thousands of dollars' worth of it from being taken in payment of his just debts. The intention thus to appropriate the property shall not only be found within the mind of the party, but it should be evidenced by some unmistakable acts, showing an intention to carry the design into effect; or some sufficient reason should be given why this intention of the party was not demonstrated by such acts. Such vague, general, and indefinite allegations as are contained in this petition were entirely insufficient to entitle

the plaintiff to the relief he sought, and the court did not err in sustaining a demurrer thereto.

The judgment is

AFFIRMED.