## BECKER et al. v. MAILLOT et al.
### (No. 3178.)

Court of Civil Appeals of Texas. Amarillo. June 26, 1929.

Rehearing Denied Sept. 11, 1929.

Ernest V. Becker, of Dallas, for appellants.
Phillips, Townsend & Phillips, Tom Scurry,
and Ralph Wood, all of Dallas, for appellees.

RANDOLPH, J. This suit was instituted by appellees, as plaintiffs, against Mazie P. Becker and her husband, Ernest V. Becker, as defendants. On trial before a jury, they were instructed to return a verdict for the plaintiffs, and judgment was rendered accordingly. From this judgment the defendants have appealed.

This suit was brought by the plaintiffs, Maillot and Seay, to recover upon three certain vendor's lien notes, in the principal sum of $1,000 maturing one year after date, $2,000 maturing two years after date, and $10,500 maturing three years after date, respectively; each bearing interest from date at 8 per cent. per annum. These notes were executed by the defendants in the following transaction:

F. D. Cochran and wife owned and occupied as their homestead certain land in Dallas county, Texas, outside of the limits of the city of Dallas; the defendants owned and in part occupied as their home certain other property in Dallas county outside of said city limits. These properties were exchanged, one for the other, under the following contract and agreement:

"This agreement, made and entered into this the 18th day of July, A. D. 1925, by and between F. D. Cochran, hereinafter designated as first party, and E. V. Becker, hereinafter designated as second party, both of the aforesaid county and state, witnesseth:

"1. The said parties have agreed to the exchange and conveyance of certain real estate, hereinafter mentioned.

"2. The property to be conveyed by first party to second party consists of 30 acres of land, more or less, not, however, to be less than 29 acres of land. Said property being about 9 miles in a northeasterly direction from the city of Dallas, Texas, and being a part of the J. M. Houx survey; said land being more particularly described in a deed recorded in volume 993, page 491, Deed Records of Dallas County, Texas. Against this property there now exists a first lien in the balance of $3,720.00; said lien is on or before and payable to the order of the Federal Land Bank of Houston, Texas, payment of principal and interest being on the amortization plan, as set out in a deed of trust to M. H. Gossett, trustee, dated December 2, 1918, executed by Thomas J. Jackson and wife, Allie M. Jackson; second party assumes said note. The agreed consideration for the sale of said property is the sum of $27,500.00, making the equity of first party in said property sold the sum of $23,780.00. Included in the sale of said property are the chickens and other fowls and all of the stock, including two horses, one cow, and one calf, and all of the implements and all crops as is, one Ford truck, farm wagon, etc., and furniture; the said land and building being sold completely furnished according to an itemized statement to be attached hereto and made a part of this contract.

"3. The property to be conveyed by second party to the first party consists of a two-story brick residence at 4016 Shannon Lane, University Park addition, Dallas county, Texas, including the lot and improvements, shades, linoleum and draperies in said premises. There is a first lien against said property of $13,500.00, payable $1,000.00 one, two, three, and four years after date, and the balance the fifth year, bearing interest at the rate of 7 per cent. per annum, payable semiannually, which the first party assumes. The equity of second party in said property sold is the sum of $11,500.00, the agreed consideration for the sale of said property being the sum of $25,000.00. The second party is further to convey to first party a lot 190x150 feet on the corner of Clayton and Brandenwood avenue, in Gastonwood addition, being a part of lot No. 6 of said addition. The agreed consideration for the sale of said property is the sum of $14,780.00. There are to be no liens of any character or description against said property, except as provided next below.

"4. The equity of second party in the two properties to be sold first party is therefore the sum of $26,280.00. The equity of the first party in the property to be sold second party is the sum of $23,780.00, leaving a balance due second party by the first party in the sum of $2,500.00. First party is to secure second party for the difference of $2,500.00, by a first failure upon the property described above in Gastonwood addition, sold by second party to first party. First party to execute a note for $2,500.00 due on or before twelve (12) months after date, bearing 8 per cent. interest per annum from date until paid and secured by a first vendor's lien and deed of trust lien in usual terms upon said property.

"5. Both parties agree to convey their respective properties by general warranty deed and to furnish to the other authentic abstracts of title, showing good title to them in their respective properties, subject only to the liens above mentioned against same, or to furnish title policies showing good title in said properties.

"6. The parties agree, within ten days from the receipt of said abstracts, either to accept the title as shown by said abstracts, or to

return it with the written objections to the title. If said abstracts are not returned by the parties with the written objections noted therein within the time specified it shall be construed as an acceptance of said title. If any title objections are made, then the parties shall have a reasonable time to cure said objections and show good and marketable title. In the event of failure of either party to furnish good and marketable title this contract may be canceled and returned, or the parties may enforce specific performance of this contract.

"7. It being also agreed that taxes, interest, insurance are to be prorated as of the date of the deeds.

"8. It is further agreed that paragraph 9 of this contract shall be consummated by the parties not later than seven days from the date hereof.

"9. This contract is made conditional upon the securing of a First Lien of $13,500.00 on the thirty acres of land described herein, said loan to bear 8 per cent. interest and to be payable $1,000.00 the first year, $2,000.00 the second year, and the balance the third year. Said loan not to cost second party more than 2 per cent. brokerage for the making of said loan.

"10. Each party agrees to pay Ann B. Gordon, the real estate agent a commission of 2½ per cent. on the $27,500.00. In other words, the first party is to pay Ann B. Gordon 2½ per cent. commission on $27,500.00 and second party is to pay Ann B. Gordon 2½ per cent. commission on $27,500.00.

"Executed in triplicate the day and year first above written.

> "[Signed] E. V. Becker.
> "F. D. Cochran."

This contract speaks for itself, and same was performed on the part of Mrs. Cochran and her husband, F. D. Cochran, and by the defendants; each delivering to the other party deeds in substantial compliance therewith.

Referring to the paragraph in which it is provided that the performance thereof is conditioned upon the securing of a loan of $13,500, which was to be a lien upon the 30-acre tract contracted to be conveyed by Mrs. Cochran and her husband to the defendants, and which loan was to bear interest at 8 per cent. per annum and be payable $1,000 in one year, $2,000 the second year, and the balance the third year, and was not to cost the second parties more than 2 per cent. brokerage for the making of said loan, the only questions we shall discuss at length arise upon the facts of the transaction of the loan, which was actually consummated.

In pursuance of the recital in the contract, Miss Ann B. Gordon, the agent who negotiated the trade between the Cochrans and the defendants, was employed to negotiate such a loan. She testifies that she approached Rosenfield and Timmons and asked them to assist her and they stated they thought that they could place the loan, if they could get $1,000 brokerage. She talked to Becker and Cochran about it. Becker did not want to pay more than the 2 per cent., and Cochran agreed to pay the difference, and this she told Timmons, and Timmons then got in touch with Maillot. Miss Gordon did not tell Maillot that this money was not to be used as purchase money—that she did not know what it was used for. Maillot inspected the Cochran property, to see if it was worth the purchase price. The defendant Becker went to see Maillot, and talked the matter of the loan over with him. It appears that they agreed that the amount of the loan should be placed in the form of vendor's lien notes in the deed from Cochran and wife to the defendant Mrs. Becker, so that Maillot would have a lien on the 30 acres, and the deed from Mrs. Cochran and her husband to Mrs. Becker, as stated, recited the three above-described notes, and also recited that Maillot had advanced that much of the purchase money. Maillot then made an arrangement with Seay, the other plaintiff, to take over one-half of the transaction with him.

The evidence clearly established that it was the positive agreement that Maillot was to have a lien upon the 30 acres deeded by Cochran and wife to Mrs. Becker, and further that Becker understood and agreed that this lien was to be given in the form of vendor's lien notes, and recited in the deed from Mr. and Mrs. Cochran to Becker, and said notes payable to Maillot.

The title to the 30 acres did not vest in Mrs. Becker and Becker until the delivery of the deed from Mrs. Cochran and her husband to Mrs. Becker. This being true, Mrs. Becker had the right to and could legally place a lien on the thirty acres for the loan to Maillot, even though the 30 acres was subsequently to be used as a homestead, and although no part of the borrowed money was to be or was actually used in paying the purchase money for it. This is true, even though a portion of the property transferred in exchange for the 30 acres was the homestead of the Beckers. The Beckers took title to the 30 acres subject to Maillot's and Seay's lien. Especially is this true where there is no evidence of fraud, mistake, or accident in the execution and delivery of the instruments evidencing the transaction or in the transaction itself. Kalteyer et al. v. Mitchell et al. (Tex. Civ. App.) 110 S. W. 463; Id., 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889; Wood et al. v. Smith (Tex. Civ. App.) 165 S. W. 471; Trammell v. Rosen (Tex. Civ. App.) 163 S. W. 145, 146; Hayner v. Chittim (Tex. Civ. App.) 228 S. W. 279, 281, and the authorities therein cited.

The assignments covering the errors alleged to arise by virtue of the claim of homestead by the Beckers and the refusal of the

trial court to recognize their claim are therefore overruled.

The defendants, in their cross-action for the recovery of usury, pleaded as follows:

"5. And for special answer herein to paragraphs 1 and 2 of plaintiff's first amended original petition, these defendants deny that the said vendor's lien notes pleaded by plaintiffs provided for interest payments of 8 per cent. per annum, but that in fact and in truth the interest rate on said principal sum of these notes was at a much higher rate and, at a rate in excess of 10 per cent. per annum, in that upon the execution of said vendor's lien notes alleged by plaintiffs, the plaintiff C. L. Maillot refused to give these defendants the money at the face value of said notes, and before he paid anything to these defendants, or either of them, he demanded and exacted from these defendants a cash payment in the form of usurious interest of $1,000, which defendants then and there paid him, and caused to be paid to him the sum of $1,000.00, the amount stipulated on the face of said notes, to wit, 8 per cent.; that is, these defendants, in addition to agreeing and obligating themselves to pay the 8 per cent. stipulated on the face of said notes, in addition thereto paid and caused to be paid to this plaintiff, C. L. Maillot, the sum of $1,000.00 in cash, and that thereafter, to wit, on or about January 29, 1926, these defendants paid to the plaintiffs the sum of $540.00 interest on said vendor's lien notes, being at the rate of 8 per cent. per annum for six months upon the face amount of said notes, and that therefore these defendants made interest payments to the plaintiffs within six months after the execution of said notes the principal sum of $1,540.00 as interest, and defendants further show the court that said notes and interest thereon, together with the additional cash payment of $1,000.00, exacted by the plaintiff as aforesaid, is an amount of interest in excess of that allowed by the provisions of our statutes, and that the amount of interest charged, being in excess of that allowed under the provisions of article 5071, Vernon's Annotated Texas Statutes 1925, the provision or agreement as to said vendor's lien notes being interest in excess of 10 per cent., is void and of no effect, for the amount or value of the entire interest stipulations in said note, by reason of the provisions as to interest being usurious.

"6. By way of special answer and cross-action herein, defendants represent that heretofore, to wit, prior to the time of filing this suit, they paid in money or caused to be paid in money to plaintiffs herein, interest on said notes in various amounts totalling $1,540.00, which said payments represent payments of usurious interest, because the average rate on said vendor's lien notes was in excess of ten per cent. per annum, an amount in excess of that allowed by law; and an amount prohibited under the provisions of article 5071, Vernon's Annotated Texas Statutes, 1925. That such payments of interest as aforesaid were usurious, prohibited by law, and defendants respectfully show to the court, that under the provisions of article 5073, Vernon's Annotated Statutes, 1925, they are entitled to recover of and from the plaintiffs and plaintiffs are bound and liable to pay these defendants an amount equal to double the amount of said usurious interest paid to and received by plaintiffs from these defendants, as before set out, to wit, $3,080.00."

In order to ascertain whether or not the transaction of the payment of the $1,000 brokerage constitutes usury, and analyzing the evidence to determine whether or not the amount paid by the defendants exceeds the amount collectible on the loan made for the period of the loan, the case at bar shows the sum of $13,500 owing as above stated. There is no question but that the loan was made by the plaintiffs out of their own funds; hence the "$1,000.00 brokerage," if paid by the defendants and received by the plaintiffs, was for the use of the money for the period of the loan, in addition to the 8 per cent. interest per annum provided for in the notes. The contract for the exchange of the properties provides that Becker was not to pay in excess of 2 per cent. brokerage. Becker testified:

"Somebody did pay some brokerage. Mr. Cochran did. The reason I know he did is because I made him the proposition; there was some other items, say insurance, taxes, and other stuff like that, that had to be taken care of, and he said he would pay my part of the brokerage. * * * In making our adjustments of the valuation of the properties to be traded, the matter of brokerage came up. In making up the valuation, I took into consideration the brokerage that would have to be paid. That was considered in making up the values shown in the contract and was included in the valuation."

It is evident from the record that Cochran and Becker were "jockeying" for terms on their trade; that, if the value of his property was reduced by Becker in the sum of $1,000, as he claims, he was compensated for this by Cochran agreeing to pay it, thus reducing the value of the trade as to Cochran's property in a like sum.

Miss Gordon testified that Cochran agreed to pay the balance over and above the 2 per cent. that was to be paid by Becker. She further testified that Cochran agreed to pay one-half of the brokerage, or $500, Becker $270, and that she paid the balance. Waiving the question as to the reduction of the valuation of Becker's property, as claimed by him, and conceding that he paid in cash the sum of $270, the interest thus paid did not exceed 10 per cent. for one year unit of time. The defendant Becker testified that he paid $540

(this the jury so found) as interest for the first six months; add to this the interest, $540 for the next six months of the year, amounts to $1,080. Add to this the $270 shown just above, as conceded by us to have been paid by Becker; such sums aggregate $1,350. The interest upon the $13,500 loan at 10 per cent. would be $1,350.

The trial court's judgment is therefore abundantly supported by the evidence, and the assignments presenting the question of usury are overruled.

We have considered all assignments of error, and, finding no reversible error, we affirm the trial court's judgment.