## FIRST NAT. BANK IN LUBBOCK v. CASEY.
### No. 3449.

Court of Civil Appeals of Texas. Amarillo.
Oct. 1, 1930.

Rehearing Denied Oct. 22, 1930.

Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

Burton S. Burks and Wm. H. Evans, both of Lubbock, for appellee.

RANDOLPH, J.

This suit was filed by the plaintiff bank against the defendant Casey to recover on a note for $1,600 executed by the defendant and also for a foreclosure of a vendor's lien on real estate. Judgment for the defendant, and plaintiff has appealed.

W. L. Ellwood and defendant Casey entered into a contract for the exchange of properties. Ellwood owned certain town lots in Lubbock, and Casey owned two labors of land in Hockley county. The deed from Ellwood to Casey conveying his town property to Casey recites the following consideration, to wit, the sum of $6,000 paid and secured to be paid by B. W. Casey as follows: $1,900 in hand paid, balance of consideration evidenced by ten first vendor's lien notes executed by B. W. Casey, payable to W. L. Ellwood or order, each note in the amount of $250, dated June 1, 1927, and due on or before January 1, 1928, to 1937, respectively, with interest

thereon from date at the rate of 6 per cent., the first installment of interest due and payable January 1, 1928, and annually thereafter on January 1st: Said notes are further and additionally secured by deed of trust to Sam C. Arnett, trustee, of even date with said deed, and one second vendor's lien note executed by B. W. Casey, payable to the First National Bank, Lubbock, Tex., or order in the amount of $1,600, dated June 1, 1927, and due on or before December 1, 1927, with interest thereon from date at the rate of 10 per cent. per annum, past-due principal and interest bearing interest at the rate of 10 per cent. per annum, etc. Said $1,600 note above described is second and inferior to the series of first lien notes herein first described.

In exchange for this property, Casey executed and delivered to Ellwood a deed conveying the two labors of land, above mentioned, and also bill of sale conveying to Ellwood certain live stock owned by Casey. Upon this live stock the plaintiff bank held a chattel mortgage lien to secure the payment of approximately $1,600 due and owing to it by Casey. Casey went to see the bank and explained the situation to them and requested that they release the stock for the purpose of his trade with Ellwood and take their security upon the property he was receiving from Ellwood. It was agreed that the amount evidenced as being owing to the bank upon the cattle should be transferred to the property sold by Ellwood to Casey, and it was further agreed that a second lien note should be executed, along with the other consideration named going to Ellwood, and payable to the plaintiff bank, and delivered to said bank in lieu of the security held by them on the cattle. This agreement was had before any release was executed and before the execution of the deed from Ellwood to Casey. Therefore it appears from the record that by reason of the promises on the part of Casey to provide for the securing of the payment of the $1,600 owing to the bank and secured by lien on the cattle, that he would execute a second lien upon the premises which Ellwood was to convey to him, the bank thereupon released this lien on the cattle. Subsequently the bank's security was delivered to it upon the land, that is, the deed of trust securing the $1,600 second lien on the Ellwood property deeded to Casey.

It was testified by the witness Zellner, the office manager of Ellwood, that:

"I have before me a bill of sale of certain animals made by B. W. Casey to W. L. Ellwood, dated 20th day of June, 1927.

"The livestock that Mr. Casey owned were included in this trade, in the consideration. We traded for it. We understood that the mortgage to the First National Bank in Lubbock to the animals had been released at the

time we traded for it. We did not investigate it. Before we traded for it we knew that it had been mortgaged."

This court held in the case of Hammond v. Floyd, 255 S. W. 777, 778:

"The advancement of purchase money by one party to another, with the express understanding that the first party is to have a lien upon the property purchased to secure his advancement, gives the first party an equitable and enforceable lien superior to a subsequent claim of homestead, notwithstanding no written lien was executed to fulfill the agreement at the very time the purchase money was advanced. It is sufficient that this equitable lien be recognized by the subsequent execution of the written lien," citing Benavides v. Houston Ice & Brewing Ass'n (Tex. Civ. App.) 224 S. W. 385, 388, writ denied.

See also Pipkin v. Bank of Miami et al. (Tex. Civ. App.) 179 S. W. 914; Kalteyer v. Mitchell (Tex. Civ. App.) 110 S. W. 462.

We are of the opinion that the trial court erred in rendering judgment for the defendant Casey, as Casey did not, at the time of the making of the agreement and the execution of release of the mortgage lien on the cattle by the bank, have any character of homestead claim upon the real estate which was deeded to him by Ellwood and that the execution of the new note by Casey to the bank, secured by second lien upon such real estate, should have been recognized as a valid lien as against the defendant's homestead claim.

The judgment of the trial court is accordingly reversed, and is here rendered in favor of the plaintiff bank as prayed for in its petition.