# MAY, 1932

## W. R. ANDREWS ET UX. v. SECURITY NATIONAL BANK OF WICHITA FALLS.

No. 5712. Decided May 16, 1932.
(50 S. W., 2d Series, 253.)

410

*Jos. H. Aynesworth* and *Hiram K. Aynesworth,* both of Borger, for plaintiffs in error.

The plaintiffs in error, being husband and wife, and occupying the former homestead, and agreeing with said Cook to exchange properties and pay the difference of five thousand five hundred dollars ($5,500) cash, the consummation of that exchange carried with the exchange of the properties the constitutional and statutory guarantees and protection that the homestead could not be encumbered, except for purchase money or improvements thereon, both of which must be in full and strict compliance with the constitutional and statutory provisions, and the act that conveyed to the plaintiffs in error the property in question was protected from its incipiency by both the constitutional and statutory laws of this state, and no scheme, plan, subterfuge or fraudulent act could militate against the guaranteed protection of the homestead. Harryman v. Harryman, 144 Pac., 262, 265; Hibernia Bank & Trust Co. v. La. Avenue Realty Co., 143 La., 962, 79 So., 554; Kalteyer v. Mitchell, 110 S. W., 462, 102 Texas, 390, 117 S. W., 792; Reisenberg v. Hankins, 258 S. W., 904; Sere v. Darby, 118 La., 619, 43 So., 255; Watkins v. Davis, 61 Texas, 414.

The allegations of the defendants' answer showing that the husband, Cook, and the Bank mutually arranged between the three, without the knowledge or consent or participation upon the part of the wife, when no consideration was to pass to Cook from the Bank for the notes nor was the notes in question any part of the consideration arising out of said transaction or going to the said Cook, the said pretended and simulated vendor's liens set out and recited in the deed of conveyance from Cook to Andrews were null and void and constituted no lien thereon as against the homestead claim of the defendant, Bennie Andrews.

The court below, having found upon a full hearing of all the evidence, that the appellee, Bennie Andrews, was not aware of the existence of said three thousand dollars ($3,000) notes at the time of her husband making the same, and that she only knew that her husband was exchanging the homestead and paying five thousand five hundred dollars ($5,500) in cash, and that she would not have consented to the exchange had she known of the existence of the notes in question, together with the allegations of the defendant's answer, which was sustained

by the court's findings, that the conduct of the bank was fraudulent, simulated and the result of a plan, scheme and subterfuge to place upon her homestead purported liens in violation of the Constitution and laws of this State, is conclusive and binding upon this court, and the court below was justified in holding that no lien passed by virtue of the transaction alleged, or ever existed, and the judgment removing, cancelling and annulling the pretended lien was correct and should now be affirmed. Chamberlin v. Leland, 94 Texas, 502, 62 S. W., 740; City of San Antonio v. Berry, 92 Texas, 319-26, 48 S. W., 496; Ellis v. Light, 73 S. W., 551; Farmer v. Simpson, 6 Texas, 310; Schneider v. Bray, 59 Texas, 668.

*Weeks, Morrow, Francis & Hankerson,* of Wichita Falls, for defendant in error.

There having been no written contract of purchase between Cook and Andrews and there having been no possession under an oral contract followed by improvements, etc., there was no title in Andrews to support any homestead right prior to the conveyance from Cook to Andrews in which the liens sought to be enforced by the bank were created. Farmer v. Simpson, 6 Texas, 310; Trammell v. Rosen, 163 S. W., 145.

The court erred in holding that any fraud was practiced upon the wife, at least so far as the appellant bank is concerned, in as much as it appears from the undisputed evidence and the court's findings that the transaction was an actual transaction in which the bank parted with $5,500; that the bank had no dealings whatever with wife and in nowise made any representations to her.

The husband being authorized to purchase a new homestead and being authorized to encumber it in its creation, the fact that he does so without first consulting his wife in nowise operates as a fraud in law upon her. Kuhn v. Foster, 16 Texas Civ. App., 465, 41 S. W., 716; Pierce v. Fort, 60 Texas, 464.

It appearing that to effectuate the purchase of the property here involved, Andrews was required to borrow $5,500, and it having been agreed that to secure same he would create a lien on the property to be acquired for the benefit of the appellant bank by causing a lien to be retained by Cook, the grantor, for the sum of $5,500 and $9,000. Such lien to be, as a part of the transaction, transferred to the bank, along with the $5,500 lien, whereupon the $5,500 would be paid to Cook. And it appearing that this was done as a part of the act of conveyance and delivery of conveyance to the property in question, it thus ap-

pears (aside from the effect the homestead question may have) that a valid contract lien was created in favor of the defendant in error. Barber v. Herring, 229 S. W., 472; Kalteyer v. Mitchell, 110 S. W., 463, 102 Texas, 390, 117 S. W., 792; Mc-Kelvain v. Allen, 58 Texas, 383; Wright v. Campbell, 82 Texas, 388, 18 S. W., 706.

It appearing that the property involved in the suit upon which lien is sought to be foreclosed was not homestead at the time of the deed from Cook to Andrews, and it appearing, for a valuable consideration, a lien was retained in the deed to be immediately transferred to the bank to secure the $9,000 of indebtedness then existing, and that such was done, the court erred in not foreclosing the lien of the defendant in error upon said property. McCarty v. Brackenridge, 1 Texas Civ. App., 170, 20 S. W., 997; Jones v. Male, 26 Texas Civ. App., 181, 62 S. W., 827; Walsh v. Ford, 27 Texas Civ. App., 573, 66 S. W., 854.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This suit was filed by the Security National Bank of Wichita Falls against W. R. Andrews and his wife, Bennie Andrews, on five promissory notes, each for the principal sum of $1,287.60, with prayer for judgment on the notes and foreclosure of a deed of trust lien on lots 10, ‘11, and 12, in block 34, in the City of Electra, in Wichita County. The trial court gave a personal judgment against W. R. Andrews, but denied recovery as against Bennie Andrews, and refused a foreclosure of the lien. Upon appeal by the Bank, the judgment of the District Court, to the extent that it denied a foreclosure of the lien, was reversed and rendered against both Andrews and wife. 24 S. W. (2d) 509.

The case is before us by writ of error. The defense against the foreclosure of the notes was that the property was the homestead of Andrews and wife. It was undeniably their homestead at the time of the execution of the notes sued on. The notes, however, were in renewal of two notes for $3,000 each, originally executed by Andrews in the form of vendor's lien notes, under circumstances which will be hereafter stated; and the validity of the lien ordered foreclosed by the Court of Civil Appeals depends upon the validity of the lien originally given to secure the two vendor's lien notes just mentioned.

There is no statement of facts in the record. In response

to a request of the plaintiff below, the trial court filed conclusions of fact and law.

On and prior to December 23, 1924, Andrews and wife owned and occupied lot 1, block 31, in the town of Electra, as their homestead. This property was fully paid for and was then of the reasonable value of $3,000. At the same time one Reuben R. R. Cook owned all of lots 10, 11, and 12, in block 34, in the town of Electra, on which was located a residence, the whole reasonably worth $8,500. Andrews and Cook, on or about the date named, orally agreed. to exchange their respective properties upon the values stated, Andrews to pay the $5,500 difference in cash. However, he did not have the money with which to make this payment, and applied to the defendant in error, the Security National Bank, for a loan of that amount. At the time he was indebted to the defendant in error in the sum of $9,000, evidenced by two notes, for which the bank had no security and which at that time was in no way connected with the subject matter of this suit. The bank agreed to make the loan, provided Andrews would renew the $9,000 indebtedness by executing three notes, each in the sum of $3,000, to be secured by what the parties termed a vendor's lien on the property which Andrews and wife were to receive in exchange for their home. In the course of time, and in accordance with the tenor of the notes, the notes (twelve in number) given for the $5,500, the difference in valuë between the properties exchanged, were paid off by Andrews, and the first of the $3,000 notes was duly paid. The notes involved in this suit were given in renewal of the last two of the three $3,000 notes, and the deed of trust in renewal or extension of the so-called vendor's lien, to be hereafter described, which secured them. The agreement between the bank and Andrews personally was that the three notes for $3,000 each were to be executed in favor of Cook, and a vendor's lien was to be reserved in the deed from Cook to Andrews reserving a vendor's lien to secure these notes as well as the first twelve notes, which actually represented a part of the purchase price of the property. All the notes were to be endorsed by Cook to the Bank without recourse, and the Bank was to pay Cook the $5,500 named above. Cook took no part in the negotiations between Andrews and the Bank with reference to the three $3,000 notes, *and Mrs. Andrews knew nothing about the execution of these notes and the lien until some years thereafter.* The findings of the trial court with reference to this matter are as follows:

"(e) I further find in this connection from the evidence

before me, that said Cook had no part in said negotiations in regard to the said 3 notes in the sum of $3,000.00 further than when it was mentioned to him, and also stated that said notes were agreed upon between said W. R. Andrews and the bank officials and that he would be expected to indorse them without recourse upon him, that he agreed to the arrangements and had his deed of conveyance prepared so reciting the said series of 15 notes as above stated, and that in pursuance with the request of the said W. R. Andrews, executed the conveyance in exchange for the notes and the conveyance of the lot known as 1 in block 31, Electra, Texas, transferred all of said series of notes to the plaintiff and in return therefor received the sum of $5,500.00, the consideration agreed upon between him and the said W. R. Andrews.

"(f) I further find in this connection that said three notes each in the sum of $3,000.00 were not called for in any deal by and between the said Andrews and the said Cook, that said Cook had no interest therein, and did not claim any benefits thereunder, and that the same did not constitute any part of the consideration in effecting the exchange between the two, Andrews and Cook, but that such consideration, if any, for their existence and delivery was wholly between the said W. R. Andrews and the plaintiff Bank, and that the name of Cook was used in making the conveyance appear to be a lien upon said lots wholly at the instance of the Bank, plaintiff herein, and W. R. Andrews, but said deed recited the retention of the vendor's lien until all of said notes were paid.

"(g) I further find in this connection that the plaintiff Bank, paid no consideration to the said Cook, nor the said Andrews beyond what is detailed herein for the making and delivery of said 3 notes, although I find in this connection that when said notes in the sum of Three Thousand Dollars were actually delivered to the said plaintiff by the said Cook that the bank books now show that same were credited to the loan to said W. R. Andrews, and that the said $9,000.00 note above mentioned was cancelled out and was ready to be delivered to the said Andrews; however, I find that the same was not actually delivered to the said Andrews until at the time that he actually paid Note No. 13, on or about July 26th, 1925; that he was not present when said Reuben R. R. Cook delivered all of said notes and received said cash payment in the sum of $5,500.00. That plaintiff Bank in said transaction intended to get a lien upon defendants' property.

"(h) I further find in this connection that W. R. Andrews

and his wife, Bennie, discussed the terms of their exchange of the properties and that she knew of the exchange prices, and that she knew that her husband was giving $5,500.00 in cash as the agreed differences in the prices of the respective properties, but that she was not aware of the existence of the three $3,000.00 notes until a short time before the filing of the suit thereon in the year of 1927, and which said suit was dismissed Oct. 11th, 1927, that had she known of the agreement to give said last known notes, that she would not have consented to the exchange of the properties. I find that she knew of their existence at the time of the former suit and also executed the renewal notes and signed the deed of trust upon said lots 10, 11, and 12, block 34, Electra, Texas.

"6th. I further find in this connection that there was no written contract between the said W. R. Andrews and the said Reuben R. R. Cook as to the exchange, but that it was merely verbal negotiations, but that the parties visited the respective properties prior to the final closing of the deal, and that said Andrews and wife bought the said property for a home and place of residence, made approaches to mechanics prior to the delivery of the deed for the purpose of securing their services in doing certain repairs and upon execution of the respective deeds began immediately the improvement of said properties so as to move therein, and did move onto said properties about January 1st, 1925, and that they have at all times since then and are now residing thereon with their family of six children, and that the same is their homestead under the laws of this State and is entitled to the protection of the laws and Constitution of this State against liens and encumbrances thereon except as provided by said laws."

On the elaborate conclusions of fact, only part of which we have quoted, and on "the evidence as a whole," the trial court found and filed "conclusions of law, separate from facts," as follows:

"I conclude *from the evidence as a whole* and from the facts above found thereon, that the attempted fixing of the lien thereon in the manner and form hereinabove found is and was a fraud upon the rights of the wife and her homestead rights therein, and that the same was simulated and not constituting any part of the consideration for the exchange of the same moving from the said W. R. Andrews to the vendor Reuben R. R. Cook, and can not under our laws and the Constitution of this State become a lien upon said lots 10, 11 and 12 in block 34, Electra, Texas." (Italics ours).

OPINION.

The homestead section of the Constitution involved in this case, Article 16, Section 50, reads as follows:

"Sec. 50. The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No *Mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife;* and all pretended sales of the homestead involving any condition of defeasance shall be void." (Italics ours).

■ Homestead laws are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the State. 29 Corpus Juris, pp. 782, 783; Armitage v. Toll, 64 Mich., 412, 415, 31 N. W., 418; Dalton v. Simpson, 270 Mo., 287, 298, 193 S. W., 546; Franklin v. Coffee, 18 Texas, 413; Black v. Rockmore, 50 Texas, 88, 96.

The universal rule of construction is that homestead provisions of the organic law and statutes are to be liberally construed, for the purpose of effectuating the wise and salutary provisions thereof. 15 Ruling Case Law, p. 547, sec. 8; 29 Corpus Juris,. p. 787, sec. 15; Woods v. Alvarado State Bank, 118 Texas, 586, 19 S. W. (2d) 35; Schneider v. Bray, 59 Texas, 668; Pocoke v. Peterson, 256 Mo., 501, 165 S. W., 1017; Riggs v. Sterling, 60 Mich., 643, 27 N. W., 705.

■■ In view of their objects and purposes, and the rule of construction stated, it is obvious we should so interpret and apply our homestead laws so that their original intendments to benefit both the citizen and the State may be effectuated. It is equally clear that in doing so we ought not to permit evasive contracts to thwart the purposes of the organic law, even though the creators of the contract may have conceived that they had found a twilight zone between the abandonment of one homestead and the acquirement of another, in which they might

create a lien on the homestead other than for purchase money or improvements, and thus effectually do the very thing which the Constitution, and statutes which follow it, intended to prohibit. The Constitution has emphatically declared that no mortgage, trust deed, *or other lien* on the homestead shall *ever* be valid, except for *purchase money* or *improvements made thereon,* and, of course, for taxes. That the lien named in the deed from Cook to Andrews, for the purpose of securing the two $3,000 notes here involved, was neither for taxes nor improvements, is, of course, obvious. It is equally clear that these notes, which represented an antecedent debt, were not for *purchase money for the property.* Nor were they, as found by the trial court, any part of the consideration between Andrews and Cook. It is to be recalled, also, that the trial court expressly found that *Mrs. Andrews was not aware of the existence of the three $3,000 notes until long after their execution, and "that had she known of the agreement to give said last named notes, that she would not have consented to the exchange of the properties."* The mere statement of the facts, it seems to us, is sufficient to show that the lien securing the three $3,000 notes was not a vendor's lien to secure purchase money. The most that can be said is that it was a contract lien equivalent to a mortgage. Honaker v. Jones, 102 Texas, 132. The lien being a mere contract or mortgage lien, its validity depends upon the issue as to whether it was created before or after the homestead estate of Mrs. Andrews attached to the property. If created before the homestead estate attached, then, of course, it is a valid lien. If created subsequent thereto, then it is void, because a homestead cannot be mortgaged. Speer on Texas Martial Rights (3rd ed.), sec. 483, p. 593; Thomas v. Ash, 199 S. W., 670.

■ The fact that a lien may be evidenced by notes or by deed purporting to retain a vendor's lien does not make it a vendor's lien or prevent its validity from being questioned. The prohibited lien is void regardless of its form. Nunn on Homestead and Other Exemptions, pp. 42, 43, sec. 4, pp. 46, 47, sec. 6. 5, 6 The question, therefore, is—when did the homestead estate attach to the property involved in this suit? The property exchanged by Mr. and Mrs. Andrews for the property in controversy was their community homestead, against which no lien existed. To that property Mrs. Andrews not only had title in fee, but a homestead right as well, which this court has declared is an estate in land. Woods v. Alvarado State Bank,

118 Texas, 586, 590, 19 S. W. (2d) 35. The homestead was *personal to her,* and the property with which it was impressed could not be conveyed by her husband without her consent, given in the manner provided by the Constitution and statutes. Woods v. Alvarado State Bank, 118 Texas, 586, 19 S. W. (2d) 35; Speer on Marital Rights in Texas (3rd ed.), sec. 457; 29 Corpus Juris, p. 784; 13 Ruling Case Law, p. 542, sec. 3, p. 545, sec. 6. The transfer of the property to Cook necessarily involved not only the conveyance of the estate in fee but the abandonment of the homestead estate in that particular property. The two estates, the estate in fee and the homestead right, however, were in existence and were the property of Andrews and wife up to the very moment of the delivery of the deed by them to Cook. *It is to be borne in mind that this transaction was the exchange of one homestead for another; that the property Andrews and wife were to receive from Cook was to become their homestead, to which they were to, and did, remove within a few days after the delivery of the deeds.* Under the facts, we are of the opinion that the homestead estate of Andrews and wife which previously attached to the property conveyed to Cook attached to the property which Cook conveyed to them, at the moment that Cook delivered the deed to the same, *eo instanti,* with the vesting of the estate is fee; that there was no intervening time between the abandonment of the old homestead, shown by the delivery of the deed to Cook, and the acquirement of the new homestead, evidenced by the delivery of the deed by Cook to Andrews; that the purchase of the new homestead from Cook is to be regarded merely as a continuation of the old homestead, and not the formation of a new one, or, as has been declared, the transmutation of one homestead immediately into another. 29 Corpus Juris, p. 837, sec. 129, and many cases cited in the notes, p. 819, sec. 85, p. 840, sec. 134; Evans v. Daniel, 25 Texas Civ. App., 365, 60 S. W., 1012; Gardner v. Douglass, 64 Texas, 76; Van Ratcliff v. Call, 72 Texas, 491, 10 S. W., 578; Schneider v. Bray, 59 Texas, 668; Chamberlin v. Leland, 94 Texas, 502, 62 S. W., 740; Foley v. Holtkamp, 28 Texas Civ. App., 123, 66 S. W., 891; Watkins v. Davis, 61 Texas, 414; Davidson v. Jefferson, 68 S. W., 823. See also Ellis v. Light, 73 S. W., 551; Whitt v. Teat, 167 S. W., 302; Farmers, etc., Bank v. Childers, 150 Ky., 719, 150 S. W., 840; Baker v. Nash, 130 Ky., 608, 113 S. W., 820; American Savings Bank v. Willenbrock, 209 Ia., 250, 228 N. W., 295. In the case last cited the Supreme Court of Iowa in part declared:

"In the case before us, there was not merely a change of the limits of the homestead within the strict purview of these sections, nor is the case merely one of sale of a homestead and using.the money derived from it in whole or in part in the purchase of another homestead. *It is a case of one homestead being transmuted by exchange immediately into another.* The theory is that the new homestead is a continuance of the old and the exemption dates from the acquisition and occupancy as a home of the old. Blue v. Heilprin & Co., 105 Iowa, 614, 75 N. W., 642; Yates v. McKibben, 66 Iowa, 357, 23 N. W., 752; Rutledge v. Wright, 186 Iowa, 777, 171 N. W., 28; Perry v. Adams, 179 Iowa, 1215, 162 N. W., 817; 29 C. J., 840." (Italics ours).

The text cited from Corpus Juris states the general rule in part as follows:

"Under the statutes of most jurisdictions, where an exchange of real estate is made, and either of the parties is entitled to a homestead in the property, the same right attaches to the premises received in exchange, and the death of the homesteader before carrying out his intention to occupy the new home does not prevent the homestead right from attaching. * * * Land acquired by exchange of homestead must be intended for a homestead. Where occupancy is necesasry to the acquisition of a homestead, the land acquired by exchange of a homestead must be subject to the same rules of occupancy which apply to the original homestead. A reasonable time must be allowed for the debtor to make the change from the old homestead to the new one, and, where there is no unreasonable delay, the homestead exemption will exist during the time intervening between the acquisition and occupancy of the new homestead." 29 Corpus Juris, sec. 129.

In the case of Schneider & Bro. v. Bray, 59 Texas, 668, Mrs. Bray, after the death of her husband, continued for some time to occupy the community homestead. She then had no family, and was, in law, a single woman, without power to acquire a new homestead. However, the homestead exemption attached to the property occupied by her by virtue of her status as surviving widow. She exchanged this homestead for other property, to which she removed. Schneider & Bro. attempted to subject the newly acquired home to the payment of a judgment which they had obtained against her. This Court, in an opinion by Chief Justice Willie, held that the property was a homestead and not subject to the claims of creditors. The opinion was based upon the proposition that

where one exchanges exempt property for other property, which by its nature is likewise exempt, the exemption may be set up as to the latter. This is undoubtedly the rule where the claimant is entitled to the benefits of an exemption statute. In the case we are discussing, Mrs. Bray, as a widow without family, was not, however, entitled to acquire a homestead,— that is, her status was not such that she could have purchased the house and lot involved and made it a homestead as an original proposition. As to a newly purchased home, she would not have been entitled to the benefits of the homestead exemption provisions of our Constitution and statutes. The property for which she actually exchanged her community homestead, while land, and capable of being made a homestead, was not of a class exempt to her as a single woman, and could only become exempt by virtue of the exchange of her homestead therefor. The case is clearly referable to the rule applied by us in the instant case, that when one homestead is exchanged for another, the homestead estate survives the exchange and passes without break or interruption to the newly acquired property. As stated by this court in Chamberlin v. Leland, 94 Texas, 502, 62 S. W., 740, in order for the exemption to attach to the subsequently acquired home, it is necessary to say that the *"former homestead was in fact converted"* into the new one.

The facts in the case of Evans v. Daniel, 25 Texas Civ. App., 365, 60 S. W., 1012, were quite similar to the facts in the case before us, Daniel and wife exchanged their homestead for an undivided 140 acres of land, then owned by Parker and others. Daniel executed two promissory notes, payable to the order of Parker, one for the sum of $2,000, payable three years from date, and one for the sum of $1,513.55, payable four years from date, each reciting that it was given in part payment for the 140 acres of land received by Daniel and wife from Parker. The deed from Parker to Daniel recited the execution of these notes as a part of the consideration for the land, and expressly reserved a lien to secure the payment of the notes. At the same time, and as a part of the same transaction, Parker, the payee, endorsed the notes without recourse, and they were delivered by Daniel, the maker, to Evans. As a matter of fact, the notes were not given as any part of the consideration for the 140 acres of land, nor for any other consideration coming from Parker, and Evans had notice of this fact when he obtained the notes. At the time in question Daniel and his wife were not in possession of the 140 acres of land so acquired from Parker, but on the trial of the case they offered testimony tending to

show that they had no other homestead, and that they acquired the land in question as their homestead. They did not take possession of the land thus acquired, however, until about four years after they bought it; but the evidence tended to excuse the delay. After suit was brought for foreclosure, Daniel and wife built a small house on the property. Among other defenses interposed by Evans against the plea of homestead was that of innocent holder of the notes, and the Court of Civil Appeals reversed the case because it was of the opinion that the evidence was sufficient to raise that issue. However, Evans on appeal urged that since Daniel and wife had not taken possession of the land in controversy at the time the notes were executed, the lien reserved to secure the notes was valid notwithstanding the defense of homestead. The Court of Civil Appeals, in an opinion by Mr. Justice Key, overruled this contention, saying:

"In our opinion, if C. J. Daniel intended, at the time he acquired the land, to make it his homestead, and if it was then in a condition to be occupied by him as a homestead without any further improvements being made thereon, and if he can give a reasonably satisfactory excuse for not having taken possession of it earlier, and show that he has in fact taken possession of it as a homestead, and that his intention to do so continued from the time he acquired it until he took such possession, *then it was his homestead from the very moment the title vested in him; and, being homestead at that time, no lien could then be created upon it by contract then or subsequently made, except for purchase money or improvements.*" (Italics ours). 60 S. W., 1013, 1014.

That there is no intervening time between the purchase of property in good faith for homestead purposes and its actual occupancy as a home, during which liens prohibited by the Constitution may be imposed, is very well illustrated by the case of Gardner v. Douglas, 64 Texas, 76. On the 19th day of February, 1883, Gardner and his wife, residing in Grayson county, purchased the property involved with a view of making it their homestead. They did not obtain possession until the 9th day of May, 1883, when they moved on to it, and after which they resided upon it as a homestead. On the 17th of January, 1883, before they purchased the property, Marx & Kempner obtained a judgment against Gardner, and filed an abstract of judgment on the 19th day of March, 1883, *more than six weeks before Gardner and his wife actually moved on to the property.* Gardner had not declared his intention to make the

property his homestead to any person except his wife, nor had he taken any steps to occupy the same as a homestead prior to the filing of the judgment lien by Marx & Kempner. The Supreme Court, in an opinion by the Commission, held that the property was protected as a homestead, and reversed and rendered the case in favor of Gardner and wife. In discussing the question, the court said:

"It appears from the record that appellants purchased the property with the bona fide intention of occupying it as their homestead just as soon as they could get possession. They purchased the property for a homestead, and at the time owned no other land. The proceeds of their former homestead, which has been previously sold, was invested in this property.

"It also sufficiently appears that the debt upon which the judgment in favor of Marx & Kempner was rendered against Gardner had been contracted before the purchase of the lot in controversy. Therefore this debt could not have been contracted upon the faith of the property; nor did Marx & Kempner advance any new consideration in the acquisition of the asserted lien.

"As the appellants acted in the best of good faith in purchasing this improved property for a homestead, and upon the expiration of the lease took prompt possession and have ever since occupied it as such, under the facts and circumstances it must be considered that the occupancy followed the purchase in such reasonable time as would invest the property with the homestead quality from the time of the purchase, as to those who have not been deceived to their injury." 64 Texas, 79, 80.

It is clear that if there had been any intervening time between the actual attachment of the homestead estate to the property involved and its actual occupancy by Gardner and wife, the judgment lien of the creditors must have become effective. The plain holding of the court, however, is that there was no such intervening time; that the property was homestead from the moment that Gardner and wife received the deed to the property, although some time elapsed before actual occupancy. The principle in this case was reaffirmed by the Supreme Court in the case of Van Ratcliff v. Call, 72 Texas, 491, 10 S. W., 578, and followed in Foley v. Holtkamp, 25 Texas Civ, App., 123, 66 S. W., 891 (writ refused). If the property in the Gardner case was homestead from the moment of purchase, then, of course, a contract lien, such as we now have before us, and such as was involved in the Daniel case, supra, in the absence of waiver, abandonment, renunciation, innocent pur-

chaser, or some other element of estoppel, would have been as futile as a judgment lien. Neither could prevail against the homestead claim.

We do not believe that the cases cited in support of the opinion of the Court of Civil Appeals have any application to the facts of the instant case.

The Supreme Court disposed of the case of Kalteyer v. Mitchell (Civ. App., 110 S. W., 462) on the issue of limitation. 102 Texas, 390, 117 S. W., 792.

The holders of the so-called vendor's lien notes in Jones v. Male, 26 Texas Civ. App., 181, 62 S. W., 827, and Hayner v. Chittim, 228 S. W., 279, were innocent purchasers for value.

In the cases of Berry v. Boggess, 62 Texas, 239; Walsh v. Ford, 27 Texas Civ. App., 573, 66 S. W., 854, and Wood v. Smith, 165 S. W., 471, the notes were in effect purchase money notes. Other similar cases are in the reports. First National Bank v. Casey, 31 S. W. (2d) 662; Skinner v. Home B. & L. Assn., 292 S. W., 913; Smith v. Clark, 266 S. W., 518; Benavides v. Houston I. & B. Assn., 224 S. W., 385.

The case of Becker v. Maillot, 19 S. W. (2d) 919, differs from and has no application to the instant case.

◼ In the case before us the exchange was merely of one homestead for another, with the execution of pretended vendor's lien notes for an antecedent and personal debt of Andrews; while that case involved additional property of large value, the making of a loan coincident with the exchange of properties in consummation of a written contract dependent upon the loan, and the creation of the lien. In that case the Court of Civil Appeals found there was no evidence of fraud; while in the instant case the trial court expressly concluded, not only from the facts found by him, but *"from the evidence as a whole,"* that the "attempted fixing of the lien in the manner and form hereinabove found is and was a fraud upon the rights of the wife and the homestead rights therein." In that case the lender, or purchaser of the so-called vendor's lien notes, was never informed that the money to be obtained was not to be used as purchase money, nor was it shown that the appellees were not purchasers for value of the notes, the burden to do which was on the appellants. Texas Jurisprudence, vol. 6, sec. 302; Stephenson v. Mallett, 240 S. W., 635 (writ refused).

◼ We recognize the fact that cases may arise when the wife as a homestead claimant may be estopped to set up her claim, but the case before us does not belong to that class. Questions

of waiver and abandonment, such as were involved in Kempner & Blum v. Comer, Fairris & Dial, 73 Texas, 196, are not present. The facts and conclusions of this Court in that case are stated in the opinion as follows:

"We do not think the court below erred in giving judgment against Comer and Fairris and their wives on their pleas of homestead. Long before the deed of trust was executed Comer and Fairris bought the lots and (living on rented places in town of Rusk) designated them as residences and as a place of business. They commenced to build a hotel on the lots, intending to use a portion of it to live in and another part as a place to carry on their mercantile business; had it nearly completed at the time they determined to mortgage it to secure credit and advances to the Blums and Kempner. The intention to so use it was generally known and was also known to the agent of the Blums and Kempner before the deed of trust was made.

"But the parties claiming homestead expressly abandoned and renounced their intention to use and occupy the premises as a homestead before it was so used, and this renunciation was made not by mere declarations but in the solemn form of a deed, the wives joining; and all this was done in order to include the property in the deed of trust then being made to secure advances and borrowed money. In such case the law will give effect to the renunciation. There was in fact no homestead in the premises when renounced. It was the intention of the parties to make it so and they had made preparations to occupy it, thus evidencing by acts their intention; but until that intention was consummated by use as a homestead it could be renounced even by declarations of the parties. Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 1. Had the property been in use at the time of the disclaimer, had it been in fact a homestead, the disclaimer would have had no effect; it would have been only an attempted evasion of the law exempting the homestead from sale under mortgage or execution for debt. Id., and Armstrong v. Moore, 59 Texas, 646.

"The designation of the premises as a homestead was evidenced by such acts of preparation as would ordinarily be sufficient to protect them from forced sale. Gardner v. Dougless, 64 Texas, 76; Moreland v. Barnhart, 44 Texas, 280; Anderson v. McKay, 30 Texas, 190; Franklin v. Coffee, 18 Texas, 413; Inge & Boring v. Cain, 65 Texas, 75. The disclaimer however put an end to all previously expressed intention and designation and estopped the parties from reasserting homestead rights."

The creation of the pretended vendor's lien in the instant

case was without the knowledge and consent of Mrs. Andrews, and, according to the finding of the trial court, a fraud upon her. She is, therefore, not estopped by the deed, abandonment, renunciation, or waiver, nor by anything which she did; nor can she be estopped by the knowledge and acts of her husband. Moreover, since the wife is not estopped, neither is the husband. Nunn on Texas Homesteads and Other Exemptions, p. 87; Martin v. Astin, 295 S. W., 584; Johnson v. Bryan, 62 Texas, 623; McLaren v. Jones, 89 Texas, 131, 229 S. W., 544; Kallman v. Ludenecker, 9 Texas Civ. App., 182, 28 S. W., 579; Black v. Garner, 63 S. W., 918.

Other reasons under the facts found by the trial court, based on an application of the rules of construction and the ordinary principles and maxims of equity, might be stated in support of our conclusion that the lien to secure the three $3,000 notes was not enforceable, but we feel the above suffices.

■ The notes sued on were given at a time when the property involved was admittedly a homestead. The validity of the lien securing them depends upon the validity of the lien securing the original three $3,000 notes, and since we hold the latter void, we must also hold the former invalid. The judgment of the Court of Civil Appeals is accordingly reversed, and that of the district court affirmed.