### MEEK v. BELOTE et ux.
#### No. 68.

District Court, S. D. Texas, Corpus Christi Division.

July 17, 1933.

Hubbard, Dyer & Sorrell, of Corpus Christi, Tex., for plaintiff.

Boone & Raymer, of Corpus Christi, Tex., for defendants.

KENNERLY, District Judge.

This is a suit (subdivision 16, § 41, title 28 USCA) by Malcolm M. Meek, receiver (appointed by the Comptroller of the Currency) of the City National Bank & Trust Company of Corpus Christi, Tex., a national bank (hereinafter for convenience called bank), against George H. Belote and wife, Ruby S. Belote, on a note of Belote to such bank, dated April 13, 1931, for $3,500, bearing interest and providing for attorney's fees, and bearing certain credits, and long past due. Also on a note for $4,500, executed by Belote and Mrs. Belote to Ed Grossman and wife, Sadie Grossman, dated March 31, 1931, bearing interest, and providing for attorney's fees, and secured by the vendor's lien retained by the Grossmans on lot 11, block 7, Bay View addition to Corpus Christi, Tex., which note has been, it is alleged, transferred by the Grossmans to such bank, and is held by such bank as collateral security for the $3,500 note. As this case involves alleged liens on the Belotes' former and present homesteads, in order to distinguish between the two homesteads, lot 11, block 7, on which the $4,500 is alleged to be a lien, is sometimes hereinafter referred to, for brevity, as new homestead.

Defendants plead a discharge in bankruptcy (of Belote) against both notes, lack of consideration and failure of consideration of the $4,500 note, and that the vendor's lien claimed by plaintiff to secure the $4,500 note is void under the Constitution and other laws of Texas, relating to homesteads. They also deny that the bank is the owner of the $3,500 note. They also deny that Mrs. Belote executed either of the notes, or the liens securing same.

The facts are as follows:

(a) The $3,500 note is owned by the bank. The indebtedness of Belote to the bank, evidenced by such $3,500 note, arose in this manner: On December 7, 1929, Belote, who had been a customer of, and borrowed from, the bank, for some time, owed it $2,000, evidenced by a note for that sum, dated November 30, 1929, due ninety days after date, which was unsecured. On December 7, 1929, he borrowed from the bank $1,500 additional, executing his note, of that date, to the bank for that sum, due ninety days after date, and to secure both notes executed a deed of trust mortgage on lot 22, block 2, in the Oak Park addition to Corpus Christi, Tex., which is

sometimes hereinafter, for brevity, referred to as old homestead. Other property was included, which has no bearing nor effect on the questions here, and need not be further considered. This mortgage was filed for record August 12, 1930. Mrs. Belote executed neither these notes nor the mortgage. The $3,500 note sued on is a continuation, extension, and/or renewal of these notes of December 7, 1929.

September 1, 1930, Belote having completed a dwelling house, etc., on old homestead, moved thereon with his wife and family. Prior to September 1, 1930, but subsequent to December 7, 1929, he had placed thereon certain building material, preparatory to the erection of such dwelling house, etc., and it became the homestead of himself and wife probably prior to September 1, 1930, but was not their homestead on, or prior to, December 7, 1929, when such deed of trust mortgage was executed by him to the bank to secure the $3,500 indebtedness. Neither Belote nor his wife intended as early as December 7, 1929, to make such property their homestead, nor had they made any preparation so to do. Whatever building material (if any) was placed on the property prior to December 7, 1929, was not placed there with the then intention of using same in erecting a building, etc., to be used as a homestead. While the evidence as to the date such property became their homestead is conflicting, taking all of it into consideration, including statements made by Belote and wife in certain other later liens executed by them on the property, prior to the time (September 1, 1930) they occupied it as their homestead, and including their statements and action respecting such matters throughout the entire period of time, the weight of the evidence supports, and compels, the above finding.

The old homestead continued as the homestead of the Belotes until exchanged by them for new homestead, as hereinafter set forth.

About May 15, 1930, while Belote and wife apparently were planning the erection of, and to enable them to erect, the dwelling house, etc., on old homestead, they borrowed $8,500 from a trust company in Corpus Christi (Corpus Christi Bank & Trust Company, hereinafter sometimes for convenience called trust company), executing and creating liens thereon in favor of such trust company. In November, 1930, it was proposed that the trust company sell and transfer $8,000 of such $8,500 loan to a life insurance company, but such insurance company declined to take same, unless and until the bank's mortgage securing the $3,500 indebtedness was either released or made inferior and secondary to the lien of the insurance company. Thereupon, the bank, at the special instance and request of Belote, made its lien against the old homestead secondary and inferior to that of the insurance company. This was done by instrument, executed by the bank, dated November 20, 1930, and duly recorded.

The lien of the bank, first as a first lien and then as a second lien, on the old homestead to secure such $3,500 indebtedness, thus continued in full force and effect until released in connection with the exchange of the old homestead for the new homestead, as herein set forth.

(b) The $4,500 note is owned by the bank, and was executed by Belote and Mrs. Belote under the following circumstances: On and prior to March 16, 1931, Ed Grossman and wife, Sadie Grossman, owned lot 7 in block 11, Bay View addition to Corpus Christi (the property which secures the $4,500 note and which is referred to as new homestead), and, on that date, the Grossmans, upon the one hand, and the Belotes, upon the other hand, entered into an exchange agreement, whereby it was agreed that Grossman's property (new homestead) should be exchanged for Belote's property (old homestead). In the exchange agreement, the value of Belote's property (old homestead) is stated to be $18,500, against which there is stated to be a lien of $8,000, and another lien of $500, or a total lien of $8,500. Therein, the value of the Grossman property (new homestead) is stated to be $10,000, against which there is stated to be certain minor paving liens. Such exchange agreement sets forth that the Grossmans are to convey to the Belotes their property, and the Belotes are to convey to the Grossmans their property, and such exchange agreement further provides as follows:

"Each of the parties hereto shall assume the encumbrances and liens on the property conveyed to him. The party whose property to be conveyed and equity therein is of least value as fixed hereby shall pay to the other party such difference in cash and notes as follows:

"No Cash Difference nor Notes other than those assumed as stated above.

"Each party hereto agrees to furnish the other with a complete abstract or title policy of the property to be conveyed showing merchantable title to his property which shall be conveyed free and clear of all encumbrances except those herein named, and subject to all restrictions applicable to the plat or addition of which said land is a part.

"Within ten days from the receipt of abstract, the party receiving same shall accept title or return abstract with written objections thereto. Failure to comply with this provision shall be construed as an acceptance of the title.

"In the event title is not good and cannot be made good within a reasonable time, the earnest money deposited is to be returned to the party depositing same upon cancellation and return of this contract, but the right to enforce specific performance hereof is retained at the option of either party hereto.

"When title objections have been cured, each party agrees to deliver a good and sufficient warranty deed properly conveying his property to the other as per the terms above stated."

The lien of the bank securing the $3,500 indebtedness is not mentioned in such exchange agreement. However, an examination by the Grossmans of the Belotes' abstract informed the Grossmans of such lien, and thereupon they notified the Belotes that they would not make the exchange, unless the bank's mortgage securing such $3,500 indebtedness be released. It was then agreed that, in connection with the conveyance of the Grossman property to the Belotes in making such exchange, the Belotes would execute to the Grossmans the $4,500 vendor's lien note sued upon, secured by vendor's lien retained by the Grossmans in their deed to the Belotes, and that the Grossmans would transfer such $4,500 note, and lien securing same, to the bank, such note to be held by the bank as collateral security for the $3,500 indebtedness. And that the bank would thereupon release its lien against Belote's old homestead. In addition, the arrangement was that Belote would obtain some person to purchase and take over from the bank the $4,500 note, and, when this was done, Belote was to receive out of the proceeds of sale thereof $1,000, and the other $3,500 was to be retained by the bank to pay off the $3,500 indebtedness. Except that Belote was unable to find a purchaser for the $4,500 note, and it remained the property of the bank, and the Belotes never at any time received the $1,000, these arrangements were carried out, and papers, deeds, etc., carrying out same were duly executed, and/or acknowledged.

There is no pleading in this case by the Belotes, attacking as a fraud upon them, or upon Mrs. Belote, either such exchange of property, or the execution of the $4,500 note, or the reservation of the vendor's lien securing same. Neither are there pleadings setting up accident or mistake. Even if it had been pleaded, there is no sufficient evidence of either fraud, accident, or mistake to permit the Belotes to escape the effect of their action. All the papers in connection with the property exchange and the $4,500 note and lien securing same were executed and/or acknowledged, in the manner required by Texas law, and Mrs. Belote (as well as Belote) then had full knowledge of the bank's $3,500 lien on the old homestead, and of all other facts in connection therewith, and in connection with such exchange, and such $4,500 note and the lien securing same.

(c) On July 15, 1931, Belote filed in this court his petition in bankruptcy, and was duly adjudged a bankrupt, in accordance with the acts of Congress relating to bankruptcy. The property new homestead was in such proceeding set aside to him as his homestead, and as exempt. He was on December 22, 1931, discharged from all debts and claims which are made provable against a bankrupt estate, and which existed prior to the date the petition in bankruptcy was filed, excepting such debts as are by law excepted from the operation of a discharge in bankruptcy.

1. It is at once apparent that the Belotes must be sustained in their resistance against the foreclosure of a lien against the new homestead, in so far as $1,000 of the $4,500 note is concerned, for the reason (among others) that such $1,000 was never advanced or paid by the bank to the Belotes, and there is no consideration to support that portion ($1,000) of the $4,500 note.

2. Defendants insist that the vendor's lien claimed by the bank as security for the $4,500 note is void under article 16, § 50, of the Constitution of Texas. Reminding the court that a federal court sitting in a state will ordinarily follow the decision of the highest court of that state construing its Constitution and other laws, plaintiff and defendants each plant themselves and stand upon a decision of the Texas Supreme Court, and say, like Fitz-James, in Scott's "Lady of the Lake," when confronted by Roderick Dhu and his henchmen, "Come one come all, this rock shall fly from its firm base as soon as I."

Defendants stand upon Andrews v. Security National Bank, 121 Tex. 409, 50 S.W. (2d) 253, 83 A. L. R. 44. But it is clear that the facts in the Andrews Case and this case are essentially different. There, there was a finding of fraud on the wife, and lack of knowledge by the wife of the execution of the notes in question. Here, the finding is to

the contrary. There, the indebtedness sought to be made a lien on the new homestead, at the time of the exchange, was not a lien on the old homestead. Here, the $3,500 indebtedness was a valid lien on the old homestead. There, there was shown, as found by the court, an effort to defraud the wife, and, without her knowledge or consent, place a heavy lien and burden on and against her new homestead, which did not exist against her old homestead. Here, without fraud and with Mrs. Belote's full knowledge and consent, there was placed on and against the new homestead only the same lien and burden as was already against the old homestead.

Plaintiff stands upon Woods v. West, 37 S.W.(2d) 129, 131, by the Commission of Appeals, but in which the Supreme Court approved the holdings of the commission. Either in the light of, or independently of, Woods v. West, I think plaintiff is right. Such vendor's lien is not void under the Texas Constitution. See cases listed and discussed in the Andrews Case.

■ 3. At the time of filing (July 15, 1931) of Belote's petition in bankruptcy, the lien of the bank on the new homestead, securing the $4,500 note, was in full force and effect. The bank was named as a creditor in the bankruptcy schedules, and such homestead listed and claimed as such. It was set aside to Belote as exempt.

The bankruptcy court was without jurisdiction to foreclose the bank's lien on such homestead. It only had jurisdiction to set aside (as it did) the homestead to Belote. Lockwood v. Bank, 190 U. S. 299, 23 S. Ct. 751, 47 L. Ed. 1061. That the discharge of the bankrupt does not, under these circumstances, affect the lien of the bank on the homestead is well settled.

4. It follows that plaintiff is entitled to a decree, directing the sale, in the manner to be set forth in such decree, of the property securing the $4,500 note (new homestead), with application of the proceeds of sale to the costs of court and the balance owing on the $4,500 note (after deducting, as of its date, $1,000 not advanced by the bank thereon), but in no event to exceed the balance owing the bank on the $3,500 indebtedness, and with no personal judgment against defendants. In view of the circumstances of this case, equity calls for defendants to have 60 days after date of entry of decree in which to prevent sale by paying the required amount into the registry of the court.

Let a decree be drawn and presented accordingly.